STEVENS, Circuit Judge.
 

 This appeal is a sequel to
 
 Jimenez v. Weinberger,
 
 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363, in which the Supreme Court held unconstitutional the portion of the Social Security Act which had provided the basis for the Secretary’s denial of plaintiffs’ application for benefits. On remand, the district court granted relief to the plaintiffs and to
 
 *692
 
 other similarly situated applicants. The Secretary has appealed, questioning (1) whether the district court had the power to certify the case as. a class action after a decision on the merits, and (2) if so, whether the award of retroactive relief to the unnamed plaintiffs was proper. Because of the novelty and importance of the issues, we recite the procedural history of the case in some detail.
 

 I
 

 Plaintiffs are the illegitimate children of a disabled wage earner. On August 21, 1969, their father, acting on their behalf, applied for insurance benefits under the Social Security Act. Because plaintiffs were born after the onset of their father’s disability, § 216(h)(3)(B) of the Act, 42 U.S.C. § 416(h)(3)(B), required the Secretary to deny their application.
 
 [1]
 
 They exhausted their administrative remedies; on June 15, 1971, which was less than 60 days after the final adverse decision of the Secretary, they commenced this action, invoking the jurisdiction of the federal court under 42 U.S.C. § 405(g).
 
 [2]
 

 The complaint sought both individual and class relief.
 

 The class allegations met the requirements of subparagraph (b)(2) of Fed.R. Civ. 23 rather than subparagraph (b)(3).
 
 [3]
 
 
 *693
 
 Plaintiffs prayed for a judgment deciar-. ing the statutory exclusion unconstitutional, enjoining the Secretary from denying benefits to plaintiffs or to any other members of the class, and for such other relief as might be appropriate.
 

 The Secretary’s answer admitted the facts alleged in the complaint, averred that the statute foreclosed relief, and denied that the case was appropriately brought as a class action. No separate motion directed at the question whether the case should be certified as a class action was filed by either party. The Secretary moved for summary judgment, contending (1) that the case should not be treated as a class action, and (2) that he should prevail on the merits. The plaintiffs filed a cross motion for summary judgment, arguing the converse of both issues. Thereafter, in May 1972 plaintiffs filed a motion to convene a three-judge court pursuant to 28 U.S.C. § 2282.
 
 [4]
 

 The three-judge court was appointed and proceeded to decide the merits, apparently without giving any consideration to the class action issue. In their opinion sustaining the constitutionality of the statute, the majority said nothing about the class action;
 
 Jimenez v. Richardson,
 
 353 F.Supp. 1356 (N.D.Ill.1973). In his dissent, however, Circuit Judge Fairchild stated that he would have enjoined enforcement of the statutory exclusion as applied to the unnamed plaintiffs “and others similarly situated.”
 
 Id.
 
 at 1363.
 

 Plaintiffs appealed directly to the Supreme Court pursuant to 28 U.S.C. § 1253. By accepting jurisdiction, that Court implicitly decided that the three-judge court was properly convened,
 
 [5]
 
 and also, again implicitly, that the district court had the power to grant injunctive relief in an action brought under § 405(g) of the Social Security Act.
 
 [6]
 
 The only question formally presented by plaintiffs’ appeal was whether the statute was constitutional; at the end of their brief, however, plaintiffs “submitted that the case should be remanded to the district court for consideration of proper relief with respect to restitution for members of the plaintiffs’ class.”
 
 [7]
 

 On June 19, 1974, the Supreme Court reversed on the merits, vacated the judgment of the district court, and remanded the case “to provide appellants an opportunity, consistent with this opinion, to establish their claim of eligibility as ‘children’ of the claimant under the Social Security Act.” 417 U.S. at 637-638, 94 5. Ct. at 2502. Neither the opinion of the Chief Justice for the Court, nor the dissent of Mr. Justice Rehnquist, made any reference to the class action issue. After the mandate issued, plaintiffs moved for the entry of an order reconvening the three-judge court, certifying the case as a class action, and granting relief to the named as well as the unnamed plaintiffs. The Secretary opposed that motion and filed his own motion for remand to the agency for a final determination of the eligibility of the named plaintiffs.
 
 *694
 
 After those motions had been briefed, the plaintiffs filed a separate motion for a ruling on the named plaintiffs’ right to relief without further administrative proceedings. Without addressing any other pending issue, on October 21, 1974, the single district judge remanded the case to the Secretary for final disposition within three weeks. The Secretary then found that plaintiffs were eligible for benefits and so advised the district court.
 

 On November 15, 1974, the single district judge entered two orders. In the first, he declared the relevant portion of the statute null and void and ordered the Secretary to pay benefits to the plaintiffs for the period after August 21, 1969, the date of their original application. In the second order, the court directed the Secretary to give notice of the resultant change in the statute
 

 to all those applicants for Social Security benefits who have been denied benefits solely by reason of the provisions of the Act now declared unconstitutional, together with an explanation of how they should proceed in order to obtain the benefits[.]
 

 He further ordered the Secretary
 

 to provide benefits to all those denied benefits since the date of the filing of this action solely by reason of that portion of the Act declared unconstitutional. Such benefits shall cover the period from which said persons would originally have been entitled but for the provisions invalidated herein, and payment of said benefits and ongoing monthly benefits to all eligible persons shall begin forthwith[.]
 

 In support of a motion for reconsideration, which was denied, and a motion for stay pending appeal, which was granted in part, the Secretary added certain factual matter to the record. There are about 7,000 members of the class; their aggregate claims amount to about $5,000,000. Although the Secretary challenges the court’s power to order retroactive relief to the unnamed members of the class, he represents that he is now paying them benefits for the period after the date of the Supreme Court decision on June 19, 1974, and that he has paid the named plaintiffs back to the date of their original application, as ordered by the district court. The amount in dispute therefore includes claims which were denied by the Secretary after the litigation commenced on June 15, 1971, and which accrued prior to June 19, 1974.
 

 II
 

 The Supreme Court’s recent decision in
 
 Weinberger
 
 v.
 
 Salfi,
 
 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), reminds us to confront at the outset the question whether the district court had jurisdiction of the class aspects of this litigation.
 
 [8]
 

 As the Court held in
 
 Salfi,
 
 42 U.S.C. § 405(g) is the only statute authorizing the district court to grant relief from a denial of benefits under the Social Security Act. The language of the statute confers authority to affirm, modify or reverse a decision of the Secretary, but contains no suggestion that a reviewing court is empowered to enter an injunctive decree whose operation reaches beyond the particular applicants before the Court. 95 S.Ct. 2457, note 8. Nevertheless, as we have already noted, the Court’s acceptance of appellate jurisdiction in this very case was a holding, albeit unarticulated, that such jurisdiction does exist. Moreover, if the Court did not believe a class action could ever be maintained under the Social Security Act, there would have been no need to analyze the shortcomings of the particular class which Salfi represented. Unquestionably § 405(g) conferred jurisdiction on the district court to hear a timely claim by each individual member of the class; we think Rule 23 provides a procedure by which such power may be
 
 *695
 
 exercised in a single appropriate proceeding. Unnamed, as well as named, plaintiffs are “applicants before the court” in a properly maintained class action. •
 

 In the
 
 Salfi
 
 case, the Court held that § 405(g) did not provide jurisdiction over the claims of the unnamed members of the class because they had not satisfied one of the three statutory requirements for judicial review of an adverse decision by the Secretary,
 
 [9]
 
 specifically, the requirement of a final decision by the Secretary. The complaint was deficient because it did not contain any allegation that those plaintiffs had “even filed an application with the Secretary, much less that he had rendered any decision, final or otherwise, review of which [was] sought.”
 

 In this case, although the complaint is somewhat ambiguous, the order of the district court overcomes this objection because it limits the class to “applicants” who have been denied benefits solely by reason of the invalid provisions of the Act. By definition, therefore, in this case the class is limited to persons satisfying the requirement of a final decision by the Secretary.
 
 [10]
 
 It is, however, not
 

 
 *696
 
 equally clear that the unnamed plaintiffs in this case satisfied the second statutory requirement for judicial review, namely, the timely commencement of a civil action.
 

 Timeliness was not an issue in
 
 Salfi
 
 because the Secretary had waived any question of limitations. No such waiver can be found in this record.
 
 [11]
 
 The question which is therefore presented is whether the timely filing of suit by the named plaintiffs satisfied the 60 day statute of limitations requirement for the entire class. The question appears to have been answered by
 
 American Pipe and Construction Co. v. Utah,
 
 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, but a possibly critical difference between that case and this must be identified.
 

 The holding in
 
 American Pipe
 
 was that the pendency of a complaint seeking relief for the class tolled the statute of limitations applicable to the claims of the unnamed plaintiffs for the period prior to the entry of the district court’s order refusing to certify the case as a class action.
 
 See
 
 414 U.S. at 543-545, 552-553, 94 S.Ct. 756. Immediately after that order was entered, and before the statute ran, the unnamed parties had filed motions to intervene. The denial of those motions was reversed by the Supreme Court. No appeal was taken from the adverse ruling on the certification question itself.
 
 [12]
 
 We cannot, therefore, be' positive that an appeal from such an order would continue to toll the statute.
 

 In this case we have no doubt that the filing of the complaint tolled the statute at least until the date of the three-judge district court decision on the merits. If that decision had expressly refused to certify the case as a class action, we think the tolling would have continued if the plaintiffs had appealed from such a ruling, but probably would not have continued if they had acquiesced. Therefore, if the district court’s failure to address the class action issue is construed as an adverse ruling, the plaintiffs’ failure to raise that issue on appeal to the Supreme Court would defeat the unnamed plaintiffs’ claims.
 

 On the other hand, if we construe the first decision on the merits as simply failing to rule upon the class issue, consistently with the analysis in
 
 American Pipe,
 
 the class claims continued to pend and the statute of limitations did not run.
 
 [13]
 
 For three reasons we think this is
 
 *697
 
 the proper conclusion to reach in this case. First, one of the purposes of a statute of limitations is to afford a defendant fair notice of potential liability; the applications actually filed by the class members provided such notice to the Secretary. Second, since by hypothesis the plaintiffs’ claims were denied solely for an impermissible reason, we think it appropriate to resolve a close question in their favor. And third, the most realistic interpretation of the action of the three-judge court is that the majority simply saw no need to rule on the class issue in view of its holding on the merits.
 
 [14]
 

 We therefore hold that the district court acquired jurisdiction of the class action when the complaint was filed, and that the claims were not thereafter barred by limitations. The question we must now consider is whether the failure to comply with Rule 23 deprived the district court of the power to grant class relief.
 

 Ill
 

 Rule 23(c)(1) provides:
 

 (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
 

 Unlike other provisions of Rule 23 which differentiate between class actions brought under subparagraphs (b)(1) and (2) and those brought under subparagraph (b)(3), this requirement is applicable to all class actions.
 

 The rule unquestionably allows the district judge to exercise his discretion in deciding upon the earliest “practicable” time to determine whether the case is to be processed as a class action; but the text certainly implies, even if it does not state expressly, that such a decision should be made in advance of the ruling on the merits. For the explicit permission to alter or amend a certification order before decision on the merits plainly implies disapproval of such alteration or amendment thereafter. On the other hand, that degree of flexibility permitted before the merits are decided also indicates that in some cases the final certification need not be made
 
 until
 
 the moment the merits are decided.
 

 From an examination of the remainder of Rule 23, it is fair to infer that the timing of the certification may well be different in (b)(3) cases than in (b)(1) or (b)(2) cases. For in the (b)(3) situation it is imperative that the class members be identified early enough to enable notice to be sent to them which in turn will give them a meaningful opportunity to request exclusion from the class.
 
 [15]
 
 Com-
 
 *698
 
 meriting on this provision, which in terms applies only to (b)(3) classes, the Court stated in
 
 American Pipe:
 

 Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. . . 414 U.S. at 552, 94 S.Ct. at 765.
 

 In that situation the class determination enables the parties to assess the contours of any potential settlement and identifies the parties who will be bound by the judgment regardless of how the case is later decided. It avoids the kind of “one-way intervention” that would be “strikingly unfair” in some cases
 
 [16]
 
 and that the Supreme Court has plainly identified as a principal concern of the draftsmen of the amended rule.
 
 [17]
 

 But in the portions of the rule referring to (b)(1) and (b)(2) class actions, the notice requirement and the language describing the form of the judgment are significantly different. The rule does not mandate advance notice to the absent class members in all such cases; the rule does not provide that they be given an opportunity to request exclusion from the class;
 
 [18]
 
 and the language of subparagraph (c)(3) would seem to permit the entry of a single order determining both the merits and the identity of the members of the class.
 
 [19]
 
 Certainly there is nothing in the rule expressly depriving the district court of power to enter such an order.
 

 This consideration of the text of the rule leads us to three conclusions, none of which is decisive in this case. First, we are persuaded that the order ultimately entered by the district court on November 15, 1974, which purports simultaneously to define the class and to
 
 *699
 
 adjudicate the merits, would have been an acceptable judgment if it had been entered promptly after the action was commenced. Second, we do not think that mere delay in the entry of an otherwise acceptable order — assuming no resultant prejudice — would deprive the court of the
 
 power
 
 to enter such order even though the delay was inconsistent with the command to act “as soon as practicable.” Third, in this case when the three-judge district court entered its original order on the merits, it plainly did not comply with Rule 23. Not only did it fail to reach the class issue as soon as practicable, as required by subparagraph (c)(1), but its judgment also omitted the description of the class members as required by subparagraph (c)(3).
 
 [20]
 
 These preliminary conclusions lead us to the question whether the court’s power simultaneously to decided the merits and to certify the case, as a class action survived the entry of the original erroneous judgment and the subsequent appeal.
 

 We have concluded that mere delay in making a class certification, even though contrary to the mandate to act as soon as practicable, does not deprive the district court of the power to enter an otherwise proper order. Nor do we believe that the entry of an erroneous judgment, subsequently vacated on appeal, necessarily terminated the court’s power to entertain a class action. In this case the delay was aggravated by the error, but, if we can confine inquiry to the question whether the court had
 
 power
 
 to grant class relief after the Supreme Court had decided the merits, we are satisfied that such power survived the violation of the rule.
 
 Cf. Sprogis v. United Air Lines,
 
 444 F.2d 1194, 1201-1202 (7th Cir. 1971).
 
 [21]
 
 We hold therefore that the district court did not exceed its jurisdiction by granting relief to the class on November 15, 1974. It may nevertheless have been reversible error to grant such relief at that time. We turn to that question.
 

 IV
 

 We start by noting that the prerequisites to a class action described in Rule 23(a) are clearly met in this case and that the allegations of the complaint satisfy the terms of subparagraph (b)(2). We have no doubt that a timely decision of the issue would have resulted in a certification that the case could be maintained as a class action.
 
 [22]
 

 It is also clear that reversal would almost certainly be required if this were a class action maintained under subdivision (b)(3) of the rule. We read the Supreme Court’s recent opinions in
 
 Eisen,
 

 [23]
 

 and
 
 *700
 

 American
 
 Pipe
 
 [24]
 
 as rather plainly requiring that conclusion. But in
 
 Eisen
 
 the court carefully noted that it was there concerned only with the notice requirement applicable to class actions under subdivision (b)(3), a requirement which is inapplicable to class actions for injunctive or declaratory relief under subdivision (b)(2).
 
 [25]
 
 That note implies that it may be appropriate to examine the reasons for the rule before interpreting it as mandating automatic reversal in a (b)(1) or (b)(2) case.
 

 The rule is largely concerned with the problem of one-way intervention. If unnamed members of the class may await the outcome on the merits before deciding whether to be excluded from the class, they will receive the benefits of a favorable judgment but not the burden of being bound by an unfavorable judgment. The precedential effect of the adverse judgment in the class action would be a hurdle to overcome, but not necessarily an insurmountable obstacle because the same issue might bt appraised differently in a different forum. Moreover, successive suits by different members of the class would defeat the purpose of the rule to eliminate the judicial waste involved in processing repetitious litigation of the same issue. There is also a risk that the failure to certify may result in a dismissal of an entire case if the claim of the named plaintiff should become moot.
 
 [26]
 
 Finally, the failure to certify may make it impossible for the parties to conduct meaningful settlement negotiations because of uncertainty with respect to both the magnitude of the contingent liability and the burdens of going forward with a trial. Without doubt, orderly class action procedure mandates compliance with subparagraph (c)(1)-
 

 On the other hand, procedural error does not warrant reversal unless it affects the substantial rights of the parties. 28 U.S.C. § 2111. If our holding on the statute of limitations issue is correct, all of the unnamed members of the plaintiff class still retain their right to bring an independent action for the relief already ordered by the district court. And if we are correct in our holding that a class action may be brought to enforce claims arising under the Social Security Act, a reversal of the class aspect of the district court order would no doubt be followed immediately by a new class action to be brought by a different named plaintiff. At least there would be no
 
 *701
 
 legal objection to such an action. We know of no defense which the Secretary could raise in such a proceeding that was not available in the district court in this case after the remand by the Supreme Court, or which was not argued before us on this appeal. As a practical matter, it is difficult to identify any substantial rights of the parties that are likely to be affected by the difference between class relief in this case and class relief in a case that would presumably be filed tomorrow if this one were to be reversed. All that appears to be at stake is the possibility that the Secretary may benefit from a combination of past illegal acts and a possible future lack of diligence by potential new class representatives.
 

 The policies of avoiding multiple litigation, and providing an effective mechanism for the enforcement of relatively small claims, favor affirmance. On the other hand, the policy underlying the doctrine of mutuality of estoppel and the policy of encouraging the settlement of class actions favor strict adherence to Rule 23’s procedural requirements. But these policies carry less than their usual weight in this case.
 

 As the Supreme Court pointed out in
 
 Blonder-Tongue v. University Foundation,
 
 402 U.S. 313, 320-327, 91 S.Ct. 1434, 28 L.Ed.2d 788, the doctrine of mutuality of estoppel has been modified significantly in recent years. Under the reasoning of Justice Traynor’s famous opinion in
 
 Bernhard
 
 v.
 
 The Bank of America National Trust and Savings,
 
 9 Cal.2d 807, 122 P.2d 892 (1942), from which the Court quoted with approval in
 
 Blonder-Tongue,
 
 it is at least doubtful that the Secretary could relitigate the merits of the common question of law raised in this case even if it had not been brought as a class action. Certainly it would be futile for him to do so after the decision of the United States Supreme Court. From the standpoint of the defendant-assuming always that we have properly concluded that the statute of limitations is tolled and that a class action is maintainable — there seems to be little difference between a class determination after the ruling on the merits and a test case brought by an individual litigant followed promptly by a class action if the individual, should prevail.
 
 [27]
 

 If the district court had not committed error when it first addressed the merits, the Secretary would face the same judgment that he now asks us to reverse. Since the applications of the members of the class gave him notice of the magnitude of the contingent liability, and since he must have recognized the substantial character of the constitutional issue raised by plaintiffs,
 
 [28]
 
 he has not been prejudiced by the fact that a correct judgment was not entered at an earlier date.
 

 From the standpoint of the plaintiffs, who have a clear entitlement to insurance benefits for which premiums have been paid by disabled wage earners, it seems to us that there would be greater injustice in permitting the Government to avoid its obligation to provide equal treatment to similarly situated beneficiaries because of a procedural error committed by the district court than in allowing absent members of the class to become formal parties to the judgment long after their doubtful posture in the case should have been clarified.
 

 Similarly, the rule’s purpose to facilitate settlement has little if any application to this case. For the Secretary had an unquestioned obligation to apply the statutory exclusion until such time as it had been authoritatively held unconstitu
 
 *702
 
 tional. Since the issue on the merits was not one subject to compromise, the concern of Rule 23 with settlement should not control our decision.
 

 In. sum, although we recognize the salutory policy considerations underlying subparagraph (c)(1) and the clear admonition by the Supreme Court to enforce the rule in cases maintained under subparagraph (b)(3) and, no doubt, in most cases maintained under (b)(1) or (b)(2), as well, we are persuaded that the rule contemplates some flexibility in its enforcement and that in this case the district court class determination, although untimely, was not erroneous.
 

 V
 

 Two questions remain. The Secretary argues (1) that the doctrine of sovereign immunity precludes recovery, and (2) that retroactive relief may not be awarded for the period prior to the date of the Supreme Court’s decision holding the statutory exclusion unconstitutional. We think both these arguments are adequately met by § 405(g) of the Act which authorizes each member of the plaintiff class to commence a civil action to recover benefits wrongfully withheld. That section operates as a waiver of sovereign immunity, and since we have held that there has been a timely assertion of the claims of the unnamed, as well as the named, plaintiffs, they are entitled to the benefit of the rule first announced by the Supreme Court in this litigation.
 

 The Secretary nevertheless argues that, on the basis of the test set forth in
 
 Chevron Oil Co. v. Huson,
 
 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, the Supreme Court’s opinion should have only a prospective application.
 
 [29]
 

 In
 
 Chevron Oil,
 
 the Court considered whether its earlier decision in
 
 Rodrigue v. Aetna Casualty & Surety Co.,
 
 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, which held that the Outer Continental Shelf Lands Act does not make admiralty law applicable to actions for personal injuries suffered on off-shore platforms, should be applied retroactively so as to bar Huson’s claims. The Court set forth the following test:
 

 In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see
 
 ie. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra,
 
 392 U.S. [481], at 496, 88 S.Ct. [2224], at 2233 [20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.
 
 g., Allen v. State Board of Elections, supra,
 
 393 U.S. [544], at 572, 89 S.Ct. [817], at 835 [22 L.Ed.2d 1]. Second, it has been stressed that “we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.”
 
 Linkletter v. Walker, supra,
 
 381 U.S. [618], at 629, 85 S.Ct. [1731], at 1738 [14 L.Ed.2d 601], Finally, we have weighed the inequity imposed by retroactive application, for “[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the ‘injustice or hardship’ by a holding of nonretroactivity.”
 
 Cipriano v. City of Houma, supra,
 
 395 U.S. [701], at 706, 89 S.Ct. [1897], at 1900 [23 L.Ed.2d 647].
 

 404 U.S. at 106-107, 92 S.Ct. at 355.
 

 In
 
 Chevron Oil,
 
 the Court found that the
 
 Rodrigue
 
 decision was not only a case of first impression but that it also in fact had overruled clear past precedent. The Court then looked to the purpose which underlay the absorption of state law as federal law in the Lands
 
 *703
 
 Act, the desire “to aid injured employees by affording them comprehensive and familiar remedies,” and concluded that a retroactive application of
 
 Rodrigue
 
 would defeat this purpose. Finally, the Court concluded that a retroactive application would produce “substantial inequitable results” in that it would deny Huson his right to a day in court. 404 U.S. at 108, 92 S.Ct. 349.
 

 Applying these factors to the instant case, however, compels us to reach the opposite conclusion; we hold that the class members
 
 [30]
 
 are entitled to the retroactive application of the Supreme Court’s decision.
 

 The Secretary argues correctly that the
 
 Jimenez
 
 decision established a new principle of law insofar as it was the first Supreme Court ruling on the constitutionality of § 216(h)(3)(B) of the Social Security Act. Prior to that time, although there was substantial disagreement among the lower courts on the validity of the Act’s provisions dealing with illegitimate children,
 
 [31]
 
 the Secretary was bound to administer the Act as written. Thus, the Secretary was required to act under the assumption that this portion was constitutional until ordered to comply with a contrary decision.
 

 Although the first of the
 
 Chevron
 
 factors suggests a nonretroactive result, the second and third overwhelmingly indicate the correctness of the district court’s award. The Supreme Court’s decision in
 
 Jimenez
 
 established that the discrimination in § 216(h)(3)(B) against illegitimate children born after the disability of their parent was constitutionally repugnant. Surely a retrospective application of this decision would only further and not retard its operation. For, the
 
 Jimenez
 
 decision holds, these children have been wrongfully denied these insurance benefits from the date of their applications.
 

 Similarly, we find that the purposes behind the entire children’s insurance benefits program support the award of retroactive benefits in this case. As the Court explained in
 
 Jimenez,
 
 “the purpose of the contested statutory scheme is to provide support for dependents of a wage earner who has lost his earning power . . ..” 417 U.S. at 633, 94 S.Ct. at 2500. The denial of these benefits by the Secretary necessarily required these plaintiffs and their family to consume other assets in order to attempt to maintain their standard of living. During his working career, plaintiffs’ father paid a portion of his wages into the Social Security program with the reasonable expectation that, if he should ever become disabled, his dependents would receive these insurance benefits. Surely the retrospective payment of such benefits furthers, rather than impedes, the effectuation of the purposes of the statute.
 

 The provisions of the Act itself support our conclusion that retroactive payments further the statutory purpose. For § 204 of the Act, 42 U.S.C. § 404,
 
 [32]
 
 / provides a specific authorization for the-' recovery of underpayments; there is no
 
 *704
 
 requirement that such denials have been willful; any mistaken denial will give rise to retroactive recovery. Thus, Congress intended that Social Security beneficiaries receive the full and correct amount of their entitlement, even if this requires payments to be made long after the period of entitlement.
 
 [33]
 

 Finally, in applying the third
 
 Chevron
 
 factor, it is important to note that it is the Secretary who must convince us that a retroactive application of
 
 Jimenez
 
 would produce “substantial inequitable results.” Thus, unless the balance of the equities clearly tips in the Secretary’s favor, the general rule of retroactivity must be applied. The Secretary has not convinced us that such inequities will result from such an application of
 
 Jimenez.
 
 On the one hand we have the substantial equities in favor of paying the benefits to the children who were admittedly entitled to them but for the unconstitutional provision in the statute. On the other, the Secretary argues, making such lump sum payments might affect the ability of the Trust Fund to make current payments to individuals who are now eligible for benefits. We find this argument unconvincing. As the Supreme Court said in
 
 Jimenez,
 
 “[TJhere is no evidence supporting the contention that to allow illegitimates in the classification of appellants to receive benefits would significantly impair the federal Social Security trust fund and necessitate a reduction in the scope of persons benefited by the Act.” 417 U.S. at 633, 94 S.Ct. at 2503.
 
 [34]
 

 Thus, applying the three factors set forth in
 
 Chevron Oil,
 
 we conclude that the district court did not err in ordering the Secretary to make payments to the class members back to the date of the filing of their original applications for benefits.
 
 [35]
 
 The judgment of the district court is, therefore,
 

 Affirmed.
 

 [1]
 

 . “(3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:
 

 * * *
 
 #
 
 *
 

 “(B) in the case of an insured individual entitled to disability insurance benefits, or who was entitled to such benefits in the month preceding the first month for which he was entitled to old-age insurance benefits — •
 

 (i) such insured individual—
 

 (I) has acknowledged in writing that the applicant is his son or daughter,
 

 (II) has been decreed by a court to be the father of the applicant, or
 

 (III) has been ordered by a court to contribute to the support of the applicant because the applicant is his son or daughter, and such acknowledgment, court decree, or court order was made before such insured individual’s most recent period of disability began; or
 

 (ii) such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of that applicant at the time such period of disability began [.]”
 

 Subparagraph (2)(A) of 42 U.S.C. § 416(h) provides that the Secretary shall apply the intestate succession law of the insured’s domicile state to determine whether an applicant is the child of an insured individual. The plaintiffs were not considered the children of Ramon Jimemez under Illinois law because the parents had not intermarried and Ramon had not formally acknowledged the children. Nor could they qualify under subparagraph 2(B), as the offspring of a marriage, commenced by a marriage ceremony, which, “but for a legal impediment . . would have been a valid marriage.”
 

 Plaintiffs could not satisfy the requirements of subparagraph (3)(B)(i), and, because they were born after the commencement of the disability period, even though they were living with and supported by Ramon Jimenez, they could not qualify under subparagraph (3)(B)(ii).
 

 [2]
 

 . That section provides, in part:
 

 “Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .”
 

 [3]
 

 . Paragraph 3 of Count II of the complaint reads as follows:
 

 “Plaintiffs EUGENIO and ALICIA JIMENEZ bring this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all claimants for child’s social security insurance benefits, who are born out of wedlock after their fathers have become entitled to receive Social Security insurance benefits by reason of old age, disability, or death. The persons in this class are so numerous as to make joinder of all members unpracticable and there are questions of law common to all members of the class. The claims of the individual Plaintiff are typical of the claims of the class, and the individual Plaintiff will fairly and adequately protect the interest of the class. Separate actions by individual members of the class would create the risk of inconsistent adjudications that would establish incompatible standards of conduct for the Defendant.”
 

 [4]
 

 . “§ 2282. Injunction against enforcement of Federal statute; three-judge court required
 

 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.”
 

 [5]
 

 . In this case, unlike
 
 Weinberger v. Salfi,
 
 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the district court did
 
 not
 
 hold the federal statute unconstitutional; § 1252 did not, therefore, confer appellate jurisdiction on the Supreme Court.
 
 Cf.
 
 footnote 8 of the
 
 Salfi
 
 opinion, 95 S.Ct. 2457. The Court’s jurisdiction under § 1253 was dependent on the fact that the character of the litigation in the district court required decision by a three-judge court.
 
 See
 
 note 4,
 
 supra.
 

 [6]
 

 . Unless the district court had jurisdiction to enjoin enforcement of an Act of Congress, 28 U.S.C. § 2282 would not have required that a three-judge court be convened; absent such a requirement, the Supreme Court would not have had appellate jurisdiction pursuant to § 1253.
 
 See
 
 note 5,
 
 supra.
 
 In his Supreme Court brief for the Government in this case the Solicitor General acknowledged that the Supreme Court’s jurisdiction rested on § 1253; he did not question that jurisdiction.
 

 [7]
 

 . Brief for appellants in No. 72-6609, O.T. 1973, pp. 44-45.
 

 [8]
 

 . As we have indicated on several recent occasions, a reviewing court has the responsibility to raise sua
 
 sponte
 
 the question of the district court’s jurisdiction.
 
 Schreiber v. Lugar,
 
 518 F.2d 1099 at 1101 (7th Cir. 1975);
 
 Carson
 
 v.
 
 Allied News Co.,
 
 511 F.2d 22, 23 (7th Cir. 1975).
 

 [9]
 

 . As the Court explained,
 

 “Section 405(g) specifies the following requirements for judicial review: (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff’s residence or principal place of business. The second and third of these requirements specify, respectively, a statute of limitations and appropriate venue. As such, they are waivable by the parties, and not having been timely raised below, see Fed.Rules Civ.Proc. 8(c), 12(h)(1), need not be considered here. We interpret the first requirement, however, to be central to the requisite grant of subject matter jurisdiction — the statute empowers district courts to review a particular type of decision by the Secretary, that type being those which are ‘final’ and ‘made after a hearing.’ ”
 

 95 S.Ct. at 2466.
 

 The court found that the unnamed class members had not satisfied § 405(g)’s “final decision” requirement.
 

 “[T]he complaint is deficient in that it contains no allegations that they have even filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought.”
 

 [10]
 

 .
 
 Salfi
 
 makes it clear that the “made after a hearing” language may be disregarded if the Secretary’s decision rested on a legal ground that did not necessitate any hearing. In that case, with respect to the named plaintiffs, the court concluded that a “final decision of the Secretary” had been rendered, even though exhaustion of the full panoply of hearings and appeals provided by the applicable Social Security regulations had not occurred. Only a constitutional issue remained with respect to these applications. The Court stated:
 

 “Plainly [the purposes of exhaustion of administrative remedies] have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act. Once a benefit applicant has presented his or her claim at sufficiently high a level of review to satisfy the Secretary’s administrative needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.”
 

 95 S.Ct. at 2467. The claims of the named plaintiffs were, therefore, found to be properly before the court.
 

 In this case, the district court defined the class as
 

 “all those denied benefits since the date of the filing of this action
 
 solely by reason of that portion of the Act declared unconstitutional."
 

 (Emphasis added). While perhaps open to differing interpretations, we read this language as referring only to those persons who were denied benefits by reason of the challenged section of the Act and by reason of that section alone. In other words, we do not interpret the court’s description as including those persons who may have been denied benefits as a result of § 216(h)(3)(B) but whose applications could have been or were rejected for other reasons as well. Thus, the class whose claims were properly before the district court was made up of applicants whose applications had progressed to a high enough level in the administrative proceedings where it could be, and was, determined “that the claim[s] [were neither otherwise invalid nor cognizable under a different section of the Act.” 95 S.Ct. at 2467. If the class is defined in this way, the exhaustion concerns embodied in § 405(g) and discussed in
 
 Salfi
 
 are satisfied. Thus, with
 
 *696
 
 respect to such a class, a “final decision of the Secretary” has been rendered, and judicial review in the district court was appropriate.
 

 [11]
 

 . The Secretary argued that the requirements of § 405(g) had not been met by the unnamed class members in his Defendant’s Memorandum in Support of His Motion for Summary Judgment, at 6, and his Memorandum of Points and Authorities in Support of Defendant’s Motion for Reconsideration, at 4.
 

 [12]
 

 . At least the Supreme Court’s opinion made no reference to any such appeal, or to the possibility that the refusal to certify might be assigned as error at the time of an appeal from the final judgment entered by the district court. The appeal to the court of appeals in
 
 American Pipe
 
 was taken by the class members who were denied leave to intervene rather than by the named plaintiff. There was no occasion for the Court to consider any question of tolling after the refusal to certify in a case in which the absent class members made no timely effort to assert their rights directly.
 

 [13]
 

 . “A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court’s docket, a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions. We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the action been permitted to continue as a class action. * * * The policies of ensuring essential
 
 *697
 
 fairness to defendants and of barring a plaintiff who ‘has slept on his rights,’
 
 Burnett v. New York Central Railway,
 
 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941, are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.” 414 U.S. at 553-555, 94 S.Ct. at 766 (footnote omitted).
 

 [14]
 

 . We do not imply approval of the district court’s failure to certify the class. That failure, like the inadequate compliance with Rule 23 in
 
 Indianapolis School Commissioners v. Jacobs,
 
 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74, created an unnecessary risk of mootness. Since there has never been any doubt in this proceeding about the existence of a live controversy between the real adversaries, the
 
 Jacobs
 
 problem is not presented here.
 

 [15]
 

 . Subparagraph (c)(2) provides:
 

 “(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the
 
 *698
 
 court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.”
 

 [16]
 

 . See
 
 Sprogis v. United Air Lines,
 
 444 F.2d 1194, 1207 (7th Cir. 1971) (dissenting opinion),
 
 cert. denied,
 
 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543. In
 
 Sprogis
 
 this Court held that the district court had power to certify the class after a decision on the merits, but on remand the district court concluded that it would be unfair to do so, 56 F.R.D. 420 (N.D.Ill.1972).
 

 [17]
 

 . As the Supreme Court explained in
 
 American Pipe,
 
 the 1966 amendment to Rule 23 which inserted subparagraph (c)(1) was specifically intended to deal with post-merits certifications:
 

 “A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation — the potential for so-called ‘one-way intervention’ — aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.”
 

 414 U.S. at 547, 94 S.Ct. at 763 (footnote omitted)
 

 [18]
 

 .
 
 See Airline Stewards v. American Airlines, Inc.,
 
 490 F.2d 636, 642 (7th Cir. 1973).
 

 [19]
 

 . Subparagraph (c)(3) provides:
 

 “(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.”
 

 [20]
 

 . It would, of course, be possible to interpret the district court’s omission in reference to the class issues as a determination that the case should
 
 not
 
 be maintained as a class action. As noted above, however, we think it more reasonable to conclude that the district court simply did not decide the class question.
 

 [21]
 

 . Our holding is consistent with this court’s disposition of the class issues in
 
 Burns v. Elrod,
 
 509 F.2d 1133, 1136-1137 (7th Cir. 1975). In that case, as in this, the district court dismissed the complaint without addressing the question whether the case should be maintained as a class action. This court reversed, holding that the complaint was sufficient, and directed the district court to consider the class issues upon remand.
 

 [22]
 

 . Of course, the district court might have certified a smaller class — perhaps just the applicants within the district — but we are not confronted by any issue concerning the size of the class.
 
 Whether
 
 there shall be a class certification is of course a question different from
 
 what
 
 class should be certified.
 

 [23]
 

 . In
 
 Eisen v. Carlisle & Jacquelin,
 
 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732, the Court condemned a procedure whereby a preliminary inquiry into the merits would precede the Rule 23(c)(1) determination. In language which indicates that certification after a final decision on the merits is equally inappropriate, the Court concluded:
 

 “We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements' for it. He is thereby allowed to obtain a determination on the merits of the
 
 *700
 
 claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such ‘[as] soon as practicable after the commencement of [the] action. . . . ’ ”
 

 [24]
 

 .
 
 See
 
 footnote 14
 
 supra; Cf. Peritz v. Liberty Loan Corporation,
 
 523 F.2d 349 (7th Cir. 1975).
 

 [25]
 

 . The Court’s footnote 14 reads as follows:
 

 “We are concerned here only with the notice requirements of subdivision (c)(2), which are applicable to class actions maintained under subdivision (b)(3). By its terms subdivision (c)(2) is inapplicable to class actions for injunctive or declaratory relief maintained under subdivision (b)(2). Petitioner’s effort to qualify his suit as a class action under subdivisions (b)(1) and (b)(2) was rejected by the Court of Appeals. See n. 4,
 
 supra.”
 

 In
 
 Bijeol v. Benson,
 
 513 F.2d 965, at 968, n. 3 (1975) we suggested that this footnote in the Supreme Court’s opinion in
 
 Eisen
 
 may require a reexamination of this court’s holding in
 
 Schrader v. Selective Service System Local Board No. 76 of Wisconsin,
 
 470 F.2d 73, 75 (7th Cir. 1972), that a judgment in a (b)(2) class action is not binding on the defendant unless prior notice has been given to all members of the class. It is not necessary to reexamine that holding in this case, but it is appropriate to identify the difference between the question whether such a judgment is binding on the defendant and the question whether such a judgment is binding on a member of the class. With that distinction in mind, we might observe that the Supreme Court’s analysis in the
 
 Blonder-Tongue
 
 case, discussed in the text,
 
 infra,
 
 may provide an independent reason for reexamining the holding in
 
 Schrader.
 

 [26]
 

 .
 
 See Board of School Commissioners of the City of Indianapolis v. Jacobs,
 
 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74. No such problem is presented by this case.
 

 [27]
 

 . See Judge Gibbons’ thoughtful analysis of the comparative significance of a test case and a judgment binding on the class in
 
 Katz v. Carte Blanche Corp.,
 
 496 F.2d 747, 758-762 (3rd Cir. 1974).
 

 [28]
 

 . Not only was the constitutional claim upheld by eight members of the Supreme Court, hut previously Judges Tuttle, Wisdom and Fairchild had all expressed the opinion that it was meritorious. See
 
 Beaty v. Weinberger,
 
 478 F.2d 300 (5th Cir. 1973), and
 
 Jiminez v. Richardson,
 
 353 F.Supp. 1356, 1362 (N.D.Ill. 1973) (dissenting opinion).
 

 [29]
 

 . This issue of the retroactivity effect of a decision holding a portion of the Social Security Act unconstitutional was briefed and argued, but not reached, in
 
 Weinberger v. Saifi, supra.
 

 [30]
 

 . As noted above, the Secretary has complied with the district court order requiring retroactive payments for the named plaintiffs back to the date of their original application.
 

 [31]
 

 .
 
 See Watts v. Veneman,
 
 344 F.Supp. 482 (D.D.C.1971),
 
 aff’d as modified,
 
 155 U.S.App.D.C. 84, 476 F.2d 529 (1973);
 
 Perry v. Richardson,
 
 440 F.2d 677 (6th Cir. 1971);
 
 Barnes v. Richardson,
 
 342 F.Supp. 435 (S.D.N.Y.1972);
 
 Norton v. Weinberger,
 
 364 F.Supp. 1117 (D.Md.1973),
 
 vacated,
 
 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150;
 
 Beaty
 
 v.
 
 Weinberger,
 
 478 F.2d 300 (5th Cir. 1973),
 
 aff’d,
 
 418 U.S. 901, 94 S.Ct. 3190, 41 L.Ed.2d 1150;
 
 Severance v. Weinberger,
 
 362 F.Supp. 1348 (D.D.C.1973).
 

 [32]
 

 . “(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:
 

 * * * * * *
 

 “(2) With respect to payment to a person of less than the correct amount, the Secretary shall make payment of the balance of the amount due such underpaid person, or, if such person dies before payments are completed or before negotiating one or more checks representing correct payments, disposition of the amount due shall be made in accordance with subsection (d) of this section.”
 

 [33]
 

 . The Secretary relies on
 
 Rothstein v. Wyman,
 
 467 F.2d 226 (2d Cir. 1972),
 
 cert. denied,
 
 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315, where the court held that retroactive payments by the State of New York of improperly withheld welfare benefits need not be made. We believe the
 
 Rothstein
 
 decision is inapposite here for several reasons. First, the court emphasized that a major factor in its refusal to order such repayments was the existence of a “scheme of cooperative federalism” that underlay the matching grant program and its recognition that, “It is not the business of the federal courts needlessly to exacerbate those problems [of federalism].” 467 F.2d at 232. Of course, no such federalism considerations can enter into our decision in this case.
 

 Second, the
 
 Rothstein
 
 court found that Congress had not spoken on the question of court-ordered retroactive payments.
 
 Id.
 
 at 234. Here, however, in enacting 42 U.S.C. § 404,
 
 supra
 
 n. 26, Congress has approved retroactive payment orders.
 

 Finally, the Second Circuit noted that the entire purpose of the welfare payments was to swiftly provide sustenance to impoverished people, and that “As time goes by . retroactive payments become compensatory rather than remedial.”
 
 Id.
 
 at 235. The Social Security insurance program is not tied to individualized need, however. The only eligibility requirements these plaintiffs must meet deal with their relationship to the disabled insured parent. Consequently, satisfying current needs of the beneficiary is only part of the purpose of the Act. By contributing to the trust fund, plaintiffs’ father established the eligibility of his children to receive the child’s benefits regardless of their need.
 

 [34]
 

 . Harry Ballantyne, an actuary for the Office of the Actuary of the Social Security Administration, estimated that if
 
 Jimenez
 
 were applied retroactively it would result in 7,000 persons receiving benefits at a cost of $5,000,000. Affidavit in Support of Motion for Stay Pending Appeal. Over $51 billion was paid out in old age, survivors, disability and health insurance by the Social Security Administration in fiscal year 1973. Dept, of Health, Education & Welfare, Social Security Bulletin, November, 1974.
 

 [35]
 

 . Our conclusion with respect to retroactivity is buttressed by the Supreme Court’s summary affirmance in
 
 Richardson v. Griffin,
 
 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660. In that case a three-judge district court had found a portion of the Social Security Act unconstitutional apd ordered payments of improperly withheld benefits.
 
 See
 
 346 F.Supp. 1226, 1237 (D.Md.1972).