**Hahn PHAN, et al., Plaintiffs,**

**v.**

**Peter E. FRIEDES, et al., Defendants.**

**No. 77 C 4363.**

United States District Court,
N. D. Illinois, E. D.

Feb. 17, 1981.

Kenneth Montgomery, Kalman Resnick, Linda Yanez, Chicago, Ill., for plaintiffs; Debra Raskin, Legal Assistance Foundation of Chicago, of counsel.

William Scott, John M. Collins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This case comes before us on plaintiffs' amended motion for entry of a final judgment order, including plaintiffs' request to amend the certification of the class defined by Judge Kirkland's earlier Memorandum Opinion and Order (hereinafter "Memorandum Opinion") issued April 16, 1979, which granted plaintiffs' motion for summary judgment.

Defendants object to (a) entry of a final judgment order, (b) the proposed redefinition of the plaintiff class, and (c) the substance of the amended proposed final judgment order submitted by plaintiffs.

For the reasons discussed below, we grant plaintiffs' motion and will enter final judgment fifteen (15) days after the date of this opinion. We also redefine the class in accordance with the intent of Congress expressed in the Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 105 (March 17, 1980), *amending* 8 U.S.C. §§ 1101 *et seq.*, and with Judge Kirkland's opinion.

*Facts*

Named plaintiffs are parolee-refugees from Vietnam and Chile who legally entered the United States for an indefinite

period pursuant to 8 U.S.C. § 1182(d)(5) (prior to amendment) and are now residents of Illinois. Plaintiffs filed this class action under Fed.R.Civ.P. 23(b)(1) and (b)(2) on behalf of all parolee-refugees who have been refused state scholarship assistance by defendants, members of the Illinois State Scholarship Commission, requesting declaratory and equitable relief as authorized by 42 U.S.C. § 1983. On April 16, 1979, Judge Kirkland, then presiding over this case, granted plaintiffs' motion for summary judgment, denied defendants' motion to dismiss and certified a class consisting of

> ... all Illinois residents who are refugees paroled into the United States for an indefinite period pursuant to 8 U.S.C. § 1182(d)(5) and who have been or may be denied Illinois state scholarship assistance solely on the basis that they are neither citizens not (sic) permanent residents of the United States ....

Memorandum Opinion at 14.

Plaintiffs filed for entry of a final judgment order eleven days later and submitted a proposed final judgment order. Defendants filed a notice of appeal on May 18, 1979, which appeal was later dismissed for want of prosecution. This case was reassigned to this court on May 1, 1979, upon Judge Kirkland's retirement.

On March 17, 1980, Congress enacted the Refugee Act of 1980, which substantially altered the character and reduced the number of refugees paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). Most of the refugees who were previously paroled into the United States under this section will now enter the United States as regular refugees under the general admission sections of the new statute, 8 U.S.C. §§ 1157, 1158. *See* discussion at pp. 411–414 *infra*. Plaintiffs have therefore filed an amended motion for entry of a final judgment order, requesting redefinition of the class.

*Discussion*

1. *Rule 58—Entry of Final Judgment on a Separate Document*

Defendants argue that there is no need for formal entry of a final judgment in this case because (a) plaintiffs have waived the requirement of a separate document, (b) Judge Kirkland's Memorandum Opinion constitutes a final judgment order, and (c) defendant is actively complying with the Memorandum Opinion.

We do not find that plaintiffs have waived the requirements of Rule 58; nor do we find that Judge Kirkland's Memorandum Opinion constitutes a final judgment order which satisfies the requirements of Fed.R.Civ.P. 58. Finally, defendants' alleged compliance with the Memorandum Opinion does not deprive this court of jurisdiction to enter a final judgment order.

Rule 58 requires that every judgment be set forth on a separate document. The separate document rule can be waived by parties when they do not object to the opposing party's treatment of the document as final, or can be waived when the court clearly intends the document to be final. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Defendants note that the sole purpose of the separate document rule was to clarify the time for appeal and so prevent duplicative and unnecessary appeals. *Id.* at 384, 98 S.Ct. at 1120. When in doubt, the time for appeal is to run from the entry of the separate, or "second" document, which is the final judgment order. *Id.* In the instant case, defendants certainly had reason to doubt that the Memorandum Opinion constituted the final order. The plaintiffs had moved for entry of a final judgment order, and submitted a proposed final judgment order, on April 27, 1979. Defendants did not file their appeal until May 18, 1979.[1] It was clear, therefore, that plaintiffs had not waived the separate document requirement of Rule 58.

1. Since no final judgment had been entered at the time of defendants' appeal of this case, the appeal on May 18, 1979, can be seen only as an interlocutory appeal of the injunction issued by the district court on April 16, 1979.

■ Nor do we think defendants are justified in treating the Memorandum Opinion as a final judgment. *Rappaport v. United States*, 557 F.2d 605 (7th Cir. 1977); *United States v. Clearfield State Bank*, 497 F.2d 356 (10th Cir. 1974). The Memorandum Opinion clearly does not settle all matters between the parties, nor do we feel that Judge Kirkland intended it should do so.[2] "An *opinion* is not itself a judgment, even though it contains conclusions of fact or of law, and foreshadows how the judge intends to dispose of the case. An opinion is the embodiment of the court's reasons for a judgment that normally is to follow." 6A Moore's Federal Practice ¶ 58.02 at p. 58–55 (1979) (emphasis original). In a class action of this nature and size, the method by which relief is to be effected is ordinarily spelled out in the judgment order. This is normal procedure and defendants should not have expected otherwise. The proposed final order submitted by plaintiffs and taken under advisement by the court contained such procedures.

■ Finally, defendants' alleged compliance with the injunction in the absence of specific direction from the court as to manner of compliance does not deprive this court of jurisdiction to enter a final judgment order. This court may require defendants to comply in a manner determined *by the court* to best effectuate the relief earned by the successful plaintiffs.[3]

Accordingly, we grant plaintiffs' motion for entry of a final judgment order, to be entered fifteen (15) days after the date of this opinion.

### 2. *Redefinition of the Plaintiff Class*

(a) *Background*

Judge Kirkland certified the plaintiff class in his Memorandum Opinion of April

16, 1979. The class was then defined to include only those refugees who had been paroled into the United States under 8 U.S.C. § 1182(d)(5). *See* pp. 409–410, *supra.*

In March of 1980 Congress amended the refugee act and enacted the new Refugee Act of 1980. Prior to the Refugee Act of 1980, the parole authority of 8 U.S.C. § 1182(d)(5) (hereinafter "Section 212" or "§ 1182") was used on an *ad hoc* basis to admit most refugees into the United States. *See* S.Rep.No.96–256, 96th Cong., 1st Sess. 1, *reprinted in* [1980] U.S.Code Cong. & Ad.News 141, 142 (hereinafter "Sen.Rep."). The parole authority was generally used to exceed the 17,400 limit on conditional entrant refugees. *Id.* There were over 4,000 Indochinese parolee-refugees in Illinois alone at the time the Memorandum Opinion was issued. Memorandum Opinion at 3. The Refugee Act of 1980 does away with this *ad hoc* use of Section 212 and instead redefines the term "refugee" by erasing geographical and territorial distinctions, and thereby including as "refugees" those who had previously been brought in under Section 212 but who will now be brought in under the general admission sections of the new act, 8 U.S.C. §§ 1157, 1158, amended (hereinafter "Sections 207 and 208" respectively). As amended, Section 212 is to be used in the future only in the rare cases of refugees who cannot enter under Sections 207 or 208, but who are still determined by the Attorney General to be in especial need of the protection of the United States. *See* Sen.Rep., *supra*, at 157.

(b) *Jurisdiction to Modify the Class*

■ Plaintiffs have requested that this court amend the definition of the class cer-

---

**2.** While defendants argue that the court never requested the plaintiffs to file a proposed final judgment order, we note that the court gave plaintiffs leave to file such a proposal and took it under advisement on April 27, 1979.

**3.** In addition, the measures allegedly taken by the defendants to "comply" with the Memorandum Opinion are insufficient, particularly in light of the Refugee Act of 1980. Although defendants have allegedly substantially altered

their rules, application forms, letters to financial assistance directors, deans, etc., and other notifications to reflect the eligibility of parolee-refugees, the Refugee Act of 1980 and *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977) (*see* pp. 413–414, *supra*), mandate that defendants treat all refugees, not just parolee-refugees, as equally eligible for scholarships as aliens and citizens.

tified by Judge Kirkland to reflect the Refugee Act of 1980 and preserve the intent of Judge Kirkland in rewarding relief to the proper class of plaintiffs. Defendants argue that we do not have authority to redefine this class since there has already been judgment on the merits.

We agree with plaintiffs that this court retains the authority to amend or redefine the class should events in the course of litigation require it. *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2nd Cir. 1968); *Guarantee Insurance Agency Co. v. Mid Continental Realty Corp.*, 57 F.R.D. 555, 564 (N.D.Ill. 1972); *Contract Buyers League v. F. & F. Investment*, 48 F.R.D. 7, 14 (N.D.Ill.1969). Amendment or redefinition of the class *after* decision on the merits is disapproved only in the case of a 23(b)(3) class, where it is unfair and prejudicial to the defendants to allow potential plaintiffs to decide whether to "opt out" of the class at a point after the risk of a negative and binding adjudication has elapsed. *Jimenez v. Weinberger*, 523 F.2d 689, 697–98 (7th Cir. 1975). However, in 23(b)(1) and (b)(2) class actions, such as the instant case,[4] the notice requirement and the language describing the form of the judgment are significantly different. The rule does not require advance notice to the known or absent class members of all cases; nor do these class members have an opportunity to "opt out." *Jimenez, id.* (delay in certifying 23(b)(1) or (b)(2) class until after judgment on the merits is permissible). Similarly, we do not believe there will be any undue prejudice to the defendants should we redefine the class at this time.

(c) *The Definition of the Plaintiff Class*

■ We find that "circumstances" surrounding this litigation, *i. e.*, the amendment of the Refugee Act by Congress this year, make it necessary to redefine the class in order to carry out the intent of Judge Kirkland's opinion.[5] We further find that the class must be redefined to consist of

all Illinois residents who are legally admitted into or granted asylum by the United States as refugees under Sections 207 and 208 of the Refugee Act of 1980, 8 U.S.C. §§ 1157, 1158, amended, as well as those who are legally paroled into the United States for an indefinite period of time pursuant to Section 212 of the Refugee Act of 1980, 8 U.S.C. § 1182(d)(5), which refugees have been or may be denied consideration for Illinois State Scholarships solely on the basis that they are neither citizens nor permanent residents of the United States.

In redefining the class in this manner, this court finds itself in an unusual situation. On one hand, we do not want to extend the scope of relief beyond that requested by the plaintiffs. At the same time there is an intervening Congressional act which directly impacts on this case and seeks to eliminate discrimination among subclasses of aliens—including refugees—on any basis. A number of facts lead us to conclude that the class definition established above fulfills both the intent of Congress and of Judge Kirkland's opinion.

First, we decline to leave the technical definition of the class as certified by Judge Kirkland in 1979 because the amendment of the Refugee Act changes and limits the effect of that definition to the point of being meaningless. As discussed above, at that time most refugees entered the United

4. Although monetary relief is an aspect of the relief awarded plaintiffs in this class action, this does not disturb the propriety of classifying this action under Fed.R.Civ.P. 23(b)(2). The monetary recoveries are clearly ancillary to the general scheme of injunctive and declaratory relief successfully sought by plaintiffs; once the conduct of the defendant makes such injunctive or declaratory relief appropriate, the full panoply of the court's equitable powers is introduced. Newburg, Class Actions, § 1145(b) at p. 243 (1977). Monetary relief is entirely appropriate "in class actions where the mone-

tary relief is not punitive in nature, but equitable—intended to restore the recipients to their rightful economic status absent the effects of the unlawful discrimination." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir. 1971), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 573 (1971). *Accord, Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1971).

5. *See* pp. 409–410, *supra*.

States as parolee-refugees under Section 212, which was used on an *ad hoc* basis to fill the gaps left by the territorial and geographical restrictions found in the various definitions of refugee in the old Refugee Act. *See Sen.Rep., supra,* at 141. The amendment of the statute by Congress this past year attempts to restrict the use of Section 212 to rare instances where the Attorney General determines that "compelling reasons in the public interest related to individual or groups of refugees require that they be paroled into the United States rather than admitted in accordance with Sections 207 or 208." *Id.,* at 531. If we retained the old class definition, we would be restricting the class to a very small group of persons who are not representative of the intended class of persons needing relief.[6]

Second, we decline to limit the class to only those prospective refugees who would have been paroled under Section 212 had they entered prior to the amendment of the Refugee Act, but now enter under Sections 207 or 208. This would create numerous and perhaps insoluble administrative difficulties and burdens. We are unable to find any standard by which refugees were paroled into the United States under Section 212 prior to 1980 other than a vague determination by the Attorney General that there was an "emergency" or a compelling need. Indeed, the large numbers of refugees paroled under Section 212 indicates

that that section was used as a catchall to admit those who did not fit the discriminatory descriptions contained in the old statute but were nonetheless deemed in need of the protection of the United States. It would be impossible to now determine in any systemic or reliable manner who of the entrants under the new act would have been paroled under Section 212 of the old act; in any event, this is a determination we are unwilling to leave to the defendants. In broadly redefining the class as we have, we impose no additional administrative burden upon the defendants since it can be anticipated that the same people who would have been paroled prior to 1980 will now enter under Sections 207 and 208. Moreover, since the Multilateral Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, 6271 (1967), requires that the state accord all refugees the same treatment as nationals with respect to education, and the same treatment as the most favorably treated aliens with respect to the award of scholarships, defendants must treat all non-national legal entrants in the same manner regardless of how this class is certified. *See Nyquist v. Mauclet,* 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977) (state cannot deny nor otherwise discriminate against legally resident aliens with regard to scholarship benefits).

We further feel that a limited definition would be contrary to the intent of Congress to "repeal the current immigration law's

---

**6.** In their Memorandum in Opposition to Supplemental Motion for Summary Judgment and to Draft Judgment Order, filed October 15, 1980, defendants attempt to argue that no relief should be granted to the plaintiff class because none of them were technically parolee-refugees or properly admitted under Section 1182(d)(5), prior to amendment. Not only is such an argument untimely at this stage of the litigation, it is also specious. First, if none of the plaintiffs belong to the class certified by the 1979 order, it stands to reason that the definition set forth in the 1979 order was improperly conceived and frustrated the intent to award relief *to the plaintiffs*, and a class of persons situated similarly to plaintiffs. In such event, it would be necessary to redefine the class to properly effectuate the relief awarded the successful plaintiffs.

Second, defendants' point that a refugee is an "alien who leaves his or her homeland for a country of first asylum and thence comes to the United States," inferring that the country of first asylum cannot be the United States, is both hypertechnical and technically incorrect. The multilateral Protocol, *infra* pp. 413–414, specifically includes in its definition of "refugee" persons who are in their own country and are being persecuted or fear persecution. It is also clear that the country of "first" asylum may be the United States, *i. e.,* any alien who is paroled into the United States will be outside the country of his or her nationality. If that alien is unable to return to the country of his or her nationality, he will be a refugee under the Protocol. H.R.Rep. 96–781, 9th Cong., 1st Sess. 19 (Conference Report; Joint Explanatory Statement of the Committee of Conference) *reprinted in* [1980] U.S.Code Cong. & Ad.News 160.

discriminatory treatment of refugees by providing a new definition of a refugee that recognizes the plight of homeless people all over the world and by according refugee admissions the same immigration status given all other immigrants.... [This act establishes] a refugee policy ... which will treat all refugees fairly and assist all refugees equally." *Sen.Rep., supra*, at 142. *See also id.*, at 144–45. We are reluctant to make a distinction where Congress has refused to allow one; Congress requires the defendant to do no less than treat all refugees equally.

Finally, we believe that a narrow definition would subvert the intent of Judge Kirkland's order that Illinois "may not differentiate between residents of the state on the basis of alienage ... [nor] discriminate between subclasses of aliens when administering its scholarship program, if those aliens are residents of Illinois." Memorandum Opinion at 11, 13. As discussed above, Judge Kirkland anticipated that this opinion would embrace the majority of those refugees who were not being treated in the same manner as other legal aliens; the fact that these same refugees are now, technically, legally entering the United States under a different statute does not affect the relief contemplated by his opinion.

We therefore grant plaintiffs' amended motion for entry of a final judgment order reflecting a redefinition of the class in accordance with the Refugee Act of 1980 and the intent of Judge Kirkland's Memorandum Opinion, which definition can be found at page 412, *supra*.