**Roy BENNETT and Wanda Cunningham as representative for the Estate of Hattie Cunningham, on their own behalf and on behalf of all those similarly situated, Plaintiffs,**

v.

**Joyce E. TUCKER, individually and in her capacity as Director of the Illinois Department of Human Rights, Defendant.**

**No. 83 C 480.**

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1989.

---

Gary H. Palm, Lori Irish, Jack M. Beerman, Jonathan K. Baum and Mark Klaiman, Edwin F. Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Frona C. Daska and Jeffrey W. Finke, Illinois Attorney General's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs Roy Bennett and Wanda Cunningham represent a class of some 3500 persons who filed charges of employment discrimination pursuant to the Illinois Fair Employment Practices Act ("FEPA"), Ill. Rev.Stat.1977 ch. 48, § 851 et seq., prior to September 16, 1979, and whose charges were administratively closed by the Illinois Fair Employment Practices Commission ("FEPC") in 1980. They seek a declaration that these closings violated their federal due process rights, and an injunction ordering defendant Joyce E. Tucker, Director of the Illinois Department of Human Rights (the successor to the FEPC), to reopen and process their cases. The plaintiffs have moved for summary judgment on the issue of liability. For the reasons set forth below, their motion will be denied.

## BACKGROUND

Prior to 1978, the FEPA provided a comprehensive, but exclusively administrative, scheme for a person believing himself (or herself) the victim of employment discrimination to seek redress. Within 180 days of the alleged violation, he had to file a charge against his employer with the FEPC. Sec. 858. The statute then instructed the FEPC to notify the employer of the charge, and to investigate. *Id.* If the Commission determined that the charge lacked substantial merit, the Commission was to dismiss the charge. *Id.* If the charge appeared meritorious, the Commission was to hold a conference with the complainant and the employer, and to seek conciliation. If conciliation failed, and if the FEPC still believed there to be substantial merit to the charge, the statute instructed the FEPC—in the provision directly at issue here—to issue a formal complaint against the employer within 180 days of the filing of the initial charge. Sec. 858.01(a). The statute then provided for a formal adversary hearing before a commissioner or adjudicator, who would issue a

recommendation either for dismissal of the complaint or for sanctions against the employer. Sec. 858.01(c). The complainant was entitled to obtain review by the full FEPC of any unsatisfactory disposition of his charge or of the complaint. Sec. 858.-02(a). If still unsatisfied, the complainant could seek judicial review of the FEPC order. Sec. 860.

There was one problem: the FEPC did not have the resources to process all of the charges, and then file complaints, within 180 days. On March 30, 1978, the Illinois Supreme Court held that the 180–day period set forth in § 858.01(a) for the FEPC to file a complaint after receiving a charge could serve as a jurisdictional bar to the FEPC filing such a complaint, at least where the employer was prejudiced as a result. *Springfield–Sangamon County Regional Planning Comm'n v. Fair Employment Practices Commission*, 71 Ill.2d 61, 15 Ill.Dec. 623, 373 N.E.2d 1307 (1978). This ruling called into question the power of the FEPC to proceed on the thousands of charges on which it had not acted within 180 days. In response, the Illinois legislature amended FEPA.

The amended statute, effective September 16, 1978, extended the time for the FEPC to determine whether to file a complaint. New § 858(b) ordered the FEPC to hold a fact-finding conference within 120 days of the filing of a charge. New § 858(d), in turn, gave the Commission 180 days from the expiration of the 120–day period to file a complaint or to dismiss the charge.

The amended statute also provided a remedy for many complainants whose charges were placed in doubt by *Springfield–Sangamon*. Section 858.01a provided that, with respect to any charge filed before March 30, 1978 "which within 180 days thereafter ha[d] not been the subject of a complaint issued by the [FEPC] or an order that no complaint be issued," the complainant had the right to seek relief directly in Illinois court.

In *Board of Governors of States Colleges and Universities for Chicago State University v. Illinois Fair Employment Practices Commission*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979), the Illinois Supreme Court clarified *Springfield–Sangamon*, holding that the 180–day period in old § 858.01(a) was jurisdictional, and that accordingly the FEPC could not proceed on any charge if it had not filed a complaint within 180 days of the filing of the charge, irrespective of any prejudice to the employer. The complainant in that case then appealed to the United States Supreme Court on the grounds that this jurisdictional bar deprived him of property without due process of law by allowing the FEPC's delay to act as a bar to the complainant's statutorily-created rights.

While *Board of Governors* was on appeal, the Illinois legislature repealed the FEPA, replacing it, effective July 1, 1980, with the Illinois Human Rights Act ("IHRA"), Ill.Rev.Stat. ch. 68, ¶ 1–101 et seq. The new law terminated the FEPC, creating two agencies in its place: the Illinois Department of Human Rights, ¶ 7–101 et seq., and the Illinois Human Rights Commission, ¶ 8–101 et seq. It also transferred all cases pending before the FEPC to the Department. Par. 9–102(A).

Under the IHRA, a complainant files his charge with the Department. Par. 7–102. The Department then proceeds in much the same way as had the FEPC, except that the new statute leaves to the Department's discretion whether to hold a fact-finding conference. If the Department finds no substantial evidence to support the charge, it is to issue an order dismissing the charge. If it finds substantial evidence, then within 300 days it is to file a complaint with the Commission. Par. 7–102(G)(1). A complainant may obtain review by the Commission of a decision by the Department to dismiss a charge. Par. 8–102(A). He may also obtain judicial review of "a final order of the Commission." Par. 8–111(A)(1). Finally, the new statute provides that, if the Department does not act within the 300 days set forth in ¶ 7–102(G)(1), then the complainant within 30 days may bring a complaint on his own to the Commission. Par. 7–102(G)(2).

Two months after its creation, the Department notified all complainants whose charges had been filed prior to September 16, 1978 and had not been the subject of a

complaint or order of dismissal within 180 days of filing, that their cases were being administratively closed due to the *Board of Governors* ruling. The notification informed these complainants that they might still be able to pursue their charges in state court pursuant to ¶ 9–102(B)(1) (repealed in 1985)—the replacement for old § 858.01a. One month later, the United States Supreme Court dismissed the appeal of *Board of Governors* on the grounds that it failed properly to present a federal question. *Zackai v. Board of Governors of States Colleges and Universities for Chicago State University*, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980).

To recapitulate, as of January 1, 1981, a complainant who had filed a charge prior to March 30, 1978, and whose charge had not been acted on within 180 days could proceed to state court under old § 858.01a; a complainant who had filed a charge between March 30, 1978 and September 16, 1978, and whose charge had not been acted on within 180 days could not proceed to court under the statute; a complainant who had filed a charge between September 16, 1978 and July 1, 1980, and whose charge had not been acted on within 300 days similarly lacked a statutory basis on which to proceed; and a complainant who had filed a charge after July 1, 1980, and whose charge had not been acted on within 300 days could pursue his charge through the administrative process and, if necessary, to court.

The Illinois Supreme Court, however, had a surprise in store. On November 13, 1981, it held that old ¶ 858.01a (new ¶ 9–102(B)(1)) violated the Illinois Constitution in providing a judicial remedy to complainants who had filed charges prior to March 30, 1978, and whose charges were then barred by administrative failure, but denying such a remedy to similarly-situated complainants who had filed charges after March 30, 1978. *Wilson v. All–State, Inc.*, 87 Ill.2d 28, 39–40, 56 Ill.Dec. 897, 428 N.E.2d 489 (1981). Because the Court also determined that the statutory provision violated the rights of employers by resurrecting previously-barred claims, *id.* at 40–41, 56 Ill.Dec. 897, 428 N.E.2d 489, the Court remedied the equal protection violation by striking down § 858.01a (rather than by holding

that anyone could proceed under it). Thus, as of the end of 1981, any complainant whose case had been administratively closed by the Department in 1980 lacked a statutory basis for pursuing his charge.

Then came *Logan v. Zimmerman*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In late 1979, Logan had filed a charge with the FEPC. Pursuant to old § 858(b)—a different provision than the one directly at issue in this case—the FEPC was supposed to have convened a fact-finding conference within 120 days, but through inadvertence had scheduled it five days late. The Illinois Supreme Court, analogizing § 858(b) to § 858.01(a), determined that *Board of Governors* controlled, and that accordingly the 120–day period for holding a conference was jurisdictional. *Zimmerman Brush Co. v. Fair Employment Practices Commission*, 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980). The Court also held that the IHRA could not be applied retroactively. *Id.* at 108–09, 44 Ill. Dec. 308, 411 N.E.2d 277. It thus held that Logan's charge was barred. *Id.* at 109, 44 Ill.Dec. 308, 411 N.E.2d 277.

This time, however, the United States Supreme Court did not sit still. On direct appeal, it first held that Logan's right "to use the FEPA's adjudicatory procedures" was a property right, and thus that the state could not deprive him of it without due process of law. *Id.* 455 U.S. at 431, 102 S.Ct. at 1155. Noting that Logan, "unlike a claimant whose charge is dismissed on the merits for lack of evidence, [could not] obtain judicial review of the Commission action," *id.* at 434, 102 S.Ct. at 1157, the Court then held that the Illinois Supreme Court's construction of § 858(b) as a jurisdictional bar to FEPC action violated due process because it allowed for the destruction of Logan's cause of action on the basis alone that the FEPC had failed to act in time. Logan therefore was entitled to have "the Commission consider the merits of his charge, based upon the substantiality of the available evidence, before deciding whether to terminate his claims." *Id.* at 434, 102 S.Ct. at 1157.

It does not take a great deal of insight to connect the Supreme Court's ruling in *Lo-*

*gan* with the plight of those complainants barred by the Illinois Supreme Court's rulings in *Springfield–Sangamon, Board of Governors* and *Wilson.* Plaintiffs Bennett and Cunningham did so, and filed this class action on behalf of all persons who had filed charges prior to September 16, 1978 and whose charges were administratively closed by the Department in 1980. In a series of three rulings, the Seventh Circuit and this court have determined that the named plaintiffs are proper representatives of the class. The plaintiffs now contend that *Logan* mandates the reopening and processing of their cases by the Department.

## DISCUSSION

The defendant faces an uphill struggle in seeking to avoid summary judgment here. This is so because the Seventh Circuit, in reversing this court's grant of summary judgment against the two named plaintiffs, explored and ruled on a number of arguments made by the defendant which are applicable to the class generally. *See Bennett v. Tucker,* 827 F.2d 63, 70–73 (7th Cir.1987). Most important for present purposes, the Seventh Circuit held that the Eleventh Amendment, which prohibits suits against state officers for money damages or other retrospective relief, does not bar this case because the relief the plaintiffs seek—the reopening and processing of their administratively closed cases—is "clearly 'prospective' as the Supreme Court has used that term." *Id.* at 71. In addition, the Court of Appeals held that the fact that the plaintiffs might have been able to pursue alternate remedies—i.e., a state court lawsuit—does not alter the fact that Illinois deprived them of due process by barring their pursuit of their FEPA charges. *Id.* at 72. The Court closed its opinion by holding that the Supreme Court's specific reference in *Logan* to the fact that its ruling would not be "unduly burdensome" (455 U.S. at 435, 102 S.Ct. at

1157)—inasmuch as very few complainants faced Logan's problem—did not have any place in the liability issue here; instead, the Seventh Circuit stated that "[i]f, on remand, the district court grants the plaintiffs' motion for summary judgment [on liability], the court will have the responsibility for fashioning a remedy that reflects the plaintiffs' interest in having their claims processed, as well as the Department's interest in avoiding procedures that are unnecessarily burdensome." 827 F.2d at 73.

The plaintiffs understandably read the Court of Appeal's ruling as indicative of that Court's sense that the plaintiffs will prevail on the liability issue here. They urge this court to take that message to heart and summarily to reject the defendant's new efforts to defeat the plaintiffs' motion. This court, however, will not do so. The Court of Appeals certainly knows how to order this court to enter judgment, and though it found no genuine issues of material fact outstanding, it refrained from doing so. This court therefore is obliged to consider the defendant's new arguments, bound by the rulings in the Seventh Circuit's opinion (and guided by its dicta).

The defendant implicitly concedes that, under *Logan,* § 858.01(a)'s 180–day jurisdictional bar violated the plaintiffs' due process rights. Nevertheless, she asserts two grounds for rejecting the class's motion for summary judgment.[1] She first argues that the Supreme Court's recent ruling in *Pittston Coal Group v. Sebben,* — U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), establishes that, because the plaintiffs did not challenge the statute through the FEPA's adjudicatory process, res judicata bars them from doing so here; she then asserts that the plaintiffs are not entitled to relief because the *Logan* decision may not be applied retroactively.[2]

*Collateral Attack*

In *Pittston Coal Group v. Sebben,* — U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d

---

1. The defendant raised other arguments for denying summary judgment for particular members of the class. This court explored and rejected these arguments in its ruling granting the plaintiff's motion to certify the class, and will not repeat the analysis here.

2. The defendant also argues that the United States Supreme Court's recent ruling in *Florida v. Long,* 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988), demonstrates that the Seventh Circuit erred in ruling that, for the purposes of the Eleventh Amendment, the plaintiffs

408 (1988), certain respondents sought to have their claims for benefits under the Black Lung Benefits Reform Act reopened on the grounds that the Department of Labor applied improper interim regulations in ruling on their claims. The Supreme Court agreed that the interim regulations violated the statute. *Id.* 109 S.Ct. at 423. The Court held, however, that these respondents were not entitled to relief because they had not pursued their administrative and judicial remedies under the Act. Because unappealed, the benefits denials were final orders, and the respondents were barred by res judicata from challenging them in a collateral proceeding. *Id.* 109 S.Ct. at 424–25.

The defendant maintains that *Sebben* controls this case. According to her, the plaintiffs had an obligation to challenge the administrative closing of their cases through the state court system; because they did not, she insists, the closings stand as res judicata to the plaintiffs claims here.

The defendant's argument is predicated on her assertion that the plaintiffs could have obtained review of the Department's disposition of their claims. This just is not so. The Illinois Supreme Court ruled in *Wilson* that old § 858.01a—the provision allowing for pre-March 20, 1978 complainants to proceed directly to court—violated equal protection precisely because those persons whose charges arose after March 20, 1978 lacked any means for proceeding with their charges. 87 Ill.2d at 38. Thus, those class members whose claims arose between March 20, 1978 and September 16, 1978 had no ability to proceed further with their charges. And while those class members whose claims arose before March 20, 1978 could have brought an independent lawsuit under § 858.01a (until *Wilson* struck it down), they too lacked any mechanism for *appealing* the FEPC's refusal to act on their claims.[3] Obviously, the plaintiffs' failure to appeal the FEPC's administrative closing of their cases cannot serve as res judicata here when the statute itself barred any further review of that action.[4]

---

are seeking prospective relief. As will be discussed more fully below, the defendant is confusing the retrospective-prospective distinction for Eleventh Amendment purposes with the retrospective-prospective distinction for retroactivity purposes. Though *Long* was a suit against a state, it was brougth under Title VII and therefore did not implicate the Eleventh Amendment. Instead, *Long* addressed whether an order to pay pension beneficiaries increased awards in the future based on a discriminatory payment schedule established in the past represented retroactive application of a prior Supreme Court ruling. Though the Court ultimately concluded that it did, its analysis has no application in the Eleventh Amendment context. Indeed, were the Eleventh Amendment at issue, there would have been no need for the Court's extensive analysis of the issue. *See Long,* 108 S.Ct. at 2363–2365. Under established Supreme Court precedent, an order to pay monetary relief in the future is always retrospective relief for Eleventh Amendment purposes, as the Seventh Circuit itself recognized in *Bennett,* 827 F.2d at 71 (citing *Edelman v. Jordan,* 415 U.S. 651, 658, 94 S.Ct. 1347, 1353, 39 L.Ed.2d 662 (1974)).

3. The defendant cites four cases which, she contends, demonstrate that the plaintiffs could have obtained judicial review of their charges. *Klein v. Fair Employment Practices Commission,* 31 Ill.App.3d 473, 334 N.E.2d 370 (1975); *Board of Education v. File,* 89 Ill.App.3d 1132, 45 Ill.Dec. 448, 412 N.E.2d 1030 (1980); *Lott v. Governors States University,* 106 Ill.App.3d 851, 62 Ill.Dec.

543, 436 N.E.2d 569 (1982); *Zackai v. Board of Governors (Zackai II),* 118 Ill.App.3d 1161, 83 Ill.Dec. 534, 470 N.E.2d 660 (1983). The first two involved administrative appeals of final agency rulings on the merits, and thus have no relevance to the plaintiffs' charges. In the latter two cases, the plaintiffs did obtain review of their administratively closed charges, but did so only through collateral state court proceedings in which the courts held that *Logan* required the Department to process the charges. *See also Franks v. Tucker,* 132 Ill.App.3d 455, 460, 87 Ill.Dec. 323, 476 N.E.2d 1315 (1985). Far from supporting the defendants position, these two cases demonstrate that the plaintiffs' only means for challenging the FEPC's actions were through collateral proceedings.

4. Had the Illinois Supreme Court not struck down § 858.01a, the defendant might have had an argument that those class members whose claims arose prior to March 20, 1978 were not deprived of due process because the statute itself provided an alternative adjudicatory process through which they could pursue their claims, a process not available to Logan. The Illinois Court, however, did strike it down, and as noted above, the Seventh Circuit already has rejected the defendant's argument that the availability of alternate state remedies negates the due process violation here. *Bennett,* 827 F.2d at 72.

*Retroactivity*

■ The defendant next argues that although *Logan* established the unconstitutionality of § 858.01(a), the decision does not help the plaintiffs because it may not be applied retroactively to their claims.[5] In order to prevail on this argument, the defendant must show four things: (1) that the plaintiffs are seeking retroactive application of *Logan;* (2) that *Logan* " 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed' "; (3) that retroactive application would not " 'retard [the] operation' " of the *Logan* rule; and (4) that retroactive application would " 'produce substantial inequitable results.' " *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 88, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 107, 92 S.Ct. 349, 355, 356, 30 L.Ed.2d 296 (1971)); *N.L.R.B. v. Lyon & Ryan Ford, Inc.,* 647 F.2d 745 (7th Cir. 1981); *see Florida v. Long,* 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988).

### 1. *Retroactive Application*

Ordinarily, whether a plaintiff is seeking retroactive application of a Supreme Court decision is not in dispute. If the defendant's allegedly unlawful activity occurred before the decision, and if the plaintiff is seeking to rely on the decision to establish the unlawfulness of the activity, then the retroactivity doctrine comes into play. *See In re Disclosure of Grand Jury Materials,* 821 F.2d 1290, 1292 (7th Cir.1987) ("The concept of retroactivity concerns the effects of new rules on acts performed prior to the announcement of those rules."); Sullivan, *United States v. Johnson: Reformulating the Retroactivity Doctrine,* 69 Cornell Law Review 166, 167–68 (1983). The problem in this case, however, lies in defining when the defendant's challenged activity occurred. *See Florida v. Long,* 487 U.S.

223, 108 S.Ct. 2354, 2363, 101 L.Ed.2d 206 (1980) ("The distinction between retroactive and prospective relief is not always self-evident.").

In *Bennett,* the Seventh Circuit stated at one point that "the plaintiffs seek an injunction requiring the defendant to cease her ongoing violation of their federal constitutional right to have their claims processed." 827 F.2d at 71. This sentence certainly appears to establish that the plaintiffs are seeking to apply *Logan* not retroactively to wrongdoing which occurred in the past, but instead prospectively to unconstitutional activity continuing today. If so, then the retroactivity doctrine has no place here, and the plaintiffs are entitled to rely on *Logan* as establishing the unconstitutionality of the defendant's conduct. Closer review of the Seventh Circuit's opinion, however, reveals that the Court did not mean what it said, at least not for the purposes of the retroactivity doctrine.

In its ruling, the Court of Appeals did not address the retroactive applicability of *Logan.* The quoted sentence came in the context of a discussion of Eleventh Amendment immunity which, though also involving retrospective-prospective analysis, differs fundamentally from the retroactivity issue. To see how, a brief analysis of Eleventh Amendment doctrine is necessary.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." On its face, this constitutional provision suggests an absolute barrier to foreign citizen suits against states in federal court, while at the same time appears inapplicable to cases such as the instant one—that is, a suit by citizens of a state against their own state.

---

**5.** The plaintiffs may have had an argument here that the defendants failure to make a nonretroactivity argument to the Court of Appeals in support of their judgment bars them from doing so now under the law of the case doctrine. *Cf. Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1089–90 (D.C.Cir.1984). Perhaps they did not do so because the Seventh Circuit's opinion ap-

pears to leave open issues it did not resolve, or perhaps because the defendant has provided new facts which could play a role in the retroactivity determination. In any event, since law of the case is not jurisdictional, 1B *Moore's Federal Practice* ¶ 0.404[10], at 119 (1983), the plaintiffs have waived this argument by failing to raise it.

Yet, like so much in the Constitution, "the immunity from suit developed in the judicial decisions is in some respects broader and in some respects narrower than a literal reading of the amendment might suggest." 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3524 at 120 (1984).

First, the Supreme Court definitively has held that the Eleventh Amendment applies not only to suits by citizens of foreign states, but also to suits by citizens of the defendant state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). At the same time, in a long line of cases beginning with *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court has held that the amendment does not bar a federal court suit against a state officer where the suit seeks to compel the officer to act in conformity with federal law, even if the officer is acting pursuant to state law.

Under evolving Eleventh Amendment jurisprudence, the *Young* doctrine allows a citizen to challenge a state statute or procedure in federal court, so long as the relief sought does not require the state to pay money damages for the past unlawfulness of the law. The Court has come to describe the prohibited relief as retrospective—that is, compensation for past wrongdoing—and the permissible relief as prospective—i.e., injunctive relief governing future conduct. *See Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). This is precisely the distinction employed by the Seventh Circuit when, in *Bennett*, it held that the plaintiffs are seeking only prospective relief—i.e., an order that the defendant process the plaintiffs' charges—and therefore are not barred by the Eleventh Amendment. 827 F.2d at 70–71.

The Seventh Circuit went further than it needed to go, however, in justifying its Eleventh Amendment ruling by calling the defendant's conduct an "ongoing violation." The retrospective-prospective distinction under Eleventh Amendment jurisprudence focuses not on the time at which the violation occurred, but rather on the nature of the relief sought. For example, in *Edelman*, the Supreme Court cited *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), as an example of prospective relief. *See* 415 U.S. at 667–68, 94 S.Ct. at 1357–58. In *Kelly*, the Court had affirmed a district court judgment ordering due process hearings to those persons whose welfare benefits had been terminated without such a hearing. *Wolff v. McDonnell*, 418 U.S. 539, 573–74, 94 S.Ct. 2963, 2983, 41 L.Ed.2d 935 (1974), demonstrates that the defendant's wrongdoing in that case was not ongoing—i.e., not prospective for retroactivity purposes—since at least some of the plaintiffs already had lost their welfare benefits before the district court ruled. *See Kelly v. Wyman*, 294 F.Supp. 887 (S.D.N.Y.1968); *Kelly v. Wyman*, 294 F.Supp. 893 (S.D.N.Y.1968). But the Eleventh Amendment could not have stood as an obstacle because the *relief* sought was prospective—i.e., "the fiscal consequences to state treasuries in th[at] case[ ] [was] the necessary result of compliance with decrees which by their terms were prospective in nature." *Edelman*, 415 U.S. at 667–68, 94 S.Ct. at 1358.

The same distinction applies here. The relief the plaintiffs are seeking is prospective for Eleventh Amendment purposes inasmuch as the plaintiffs demand injunctive relief ordering a fair hearing in the future; in this respect too, the defendant's refusal to provide such a hearing can be called ongoing. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985). It is not proper, however, to carry this retrospective-prospective analysis over to the question at issue here—that is, whether the plaintiffs are seeking to apply *Logan* retroactively. That determination must turn on the date the constitutional violation occurred. *See generally* Annotation, United States Supreme Court's Views as to Retroactive Effect of its Own Decisions Announcing New Rules, 65 L.E.2d 1219 (1981).

Because the plaintiffs reject the applicability of retroactivity analysis only through their reliance on what the Seventh Circuit said in the context of its Eleventh Amendment discussion, they do not propose a date at which the constitutional violations occurred, relying instead on the notion that

the violations are ongoing—i.e., every day the defendant refuses to process their charges, she is violating their due process rights anew. Yet, this court cannot accept this construction of the due process violation at issue here. Under the statute in effect when the plaintiffs brought their charges, the expiration of 180 days did not merely place their cases in limbo, it "destroy[ed] [their] entitlement[s] without according [them] proper procedural safeguards." *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. This court fails to perceive any meaningful distinction between this type of destruction, and the sort at issue in *Kelly.* *See also Wolff v. McDonnell,* 418 U.S. at 573–74, 94 S.Ct. at 2983 (retroactivity analysis applicable where the state had failed to provide due process to prisoners charged with disciplinary infractions). The plaintiffs here were deprived of property without due process when their charges were extinguished at the expiration of the 180–day period. Since this occurred for every plaintiff well before the Supreme Court issued *Logan,* the plaintiffs are seeking retroactive application of that decision.

### 2. *New Law*

Having established that retroactivity analysis applies in this case, the defendant next must establish that *Logan* "decid[ed] an issue of first impression whose resolution was not clearly foreshadowed." *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. There is no question that *Logan* decided an issue of first impression in the United States Supreme Court. A simple reading of the opinion demonstrates that never before had the Court decided whether a jurisdictional bar to a state-created right predicated on a state agency's failure to act deprives the plaintiff of due process of law. The question, then, is whether the *Logan* holding was clearly foreshadowed. *See E.E.O.C. v. Vucitech,* 842 F.2d 936, 941 (7th Cir.1988).

In rejecting Logan's due process argument, the Illinois Supreme Court held that "[t]he legislature could establish reasonable procedures to be followed upon a charge, and the observance of them here did not violate his constitutional rights." *Zimmerman Brush Co. v. Fair Employ-* *ment Practices Commission,* 82 Ill.2d at 108, 44 Ill.Dec. 308, 411 N.E.2d 277. Today we know that whereas state law creates substantive rights, federal law governs the procedures the state must employ before depriving someone of those rights. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Under this approach to due process, the Illinois Supreme Court clearly erred in holding that, after creating a right to the FEPA's adjudicatory processes, the legislature could provide for its destruction without a hearing of any sort.

Yet, during the 1970's, this view of due process was far from clear. In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), a plurality of the Supreme Court had held that "where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant ... must take the bitter with the sweet." *Id.* at 153–54, 94 S.Ct. at 1644; *see generally* Tribe, American Constitutional Law § 10–12 (1988). Although this approach—that where the state creates new property it also may place procedural limitations on its availability—never commanded a majority of the Court, subsequent cases suggested that the Court was moving in that direction. *Loudermill,* 470 U.S. at 540, 105 S.Ct. at 1492 (discussing *Arnett's* life and death); *see Bishop v. Wood,* 426 U.S. 341, 356, 96 S.Ct. 2074, 2083, 48 L.Ed.2d 684 (1976) (White, J., dissenting) (accusing the majority of relying on *Arnett's* "bitter with the sweet" approach).

Thus, when the 1970's came to an end, it was by no means clear the United States Supreme Court would hold that the FEPA's jurisdictional bar constituted an unlawful procedural limitation on a substantive right. Indeed, of the two cases *Loudermill* cited as having sounded *Arnett's* death knell, one was *Logan* itself. The other was *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), a slightly earlier case, but one that does not assist the plaintiffs here since it issued in 1980, after the Illinois Supreme Court's ruling in

*Board of Governors* and thus after all of the plaintiffs' cases already were barred.

In *Bennett,* the Seventh Circuit reversed this court for having granted summary judgment against one of the named plaintiffs on the grounds of laches. In so doing, the Court of Appeals held that the plaintiff could not be faulted for having waited from 1980 (the date of the administrative closing) through 1983 to bring this lawsuit, in part because "until the Supreme Court's decision in *Logan v. Zimmerman,* [her] constitutional right to have her claim processed was not clearly established." 827 F.2d at 69. Though not determinative in the retroactivity context, this holding provides further support for the view that the *Logan* decision was not clearly foreshadowed. *See Florida v. Long,* 108 S.Ct. at 2359 (rejecting retroactivity where earlier opinion had not "clearly defined the employer's obligations under Title VII with respect to the benefits payments"). This court so holds.

### 3. *The Effect of Retroactivity*

The defendant next must establish that rejecting retroactive application would not retard the operation of the *Logan* rule. Recently, the Supreme Court expounded on this factor, stating that retroactive application is appropriate only where necessary "to deter deliberate violations [of] or grudging compliance [with]" with the new rule. *Florida v. Long,* 108 S.Ct. at 2359. That clearly is not the case here. Even before *Logan* issued, the Illinois legislature had acted to do away with those time provisions of the act which the Illinois Supreme Court had determined to be jurisdictional. Today, not only may a complainant proceed on his own if the Department fails to act on his charge within the statutory time limit, but the Illinois courts consistently have held that, in light of *Logan,* the time limits in the IHRA may not serve to bar the Department from acting after the expiration of the period. *Franks v. Tucker,* 132 Ill.App.3d 455, 460, 87 Ill.Dec. 323, 476 N.E.2d 1315 (1985); *see also* ¶ 7–102(G)(3). Thus, though retroactive application of *Logan* would provide relief to persons whose claims died long ago, "denying retroactive application in this case ... [will] not weaken the rule in any respect or retard its operation." *Silverman v. Barry,* 845 F.2d 1072, 1085 (D.C.Cir.1988); *Cohn v. G.D. Searle & Co.,* 784 F.2d 460, 465 (3d Cir. 1986); *see Florida v. Long,* 108 S.Ct. at 2362.

### 4. *Inequitable Results*

Finally, in order to avoid retroactivity, the defendant must show that *Logan* "'could produce substantial inequitable results if applied retroactively.'" *Chevron,* 404 U.S. at 98, 92 S.Ct. at 351 (quoting *Cipriano v. City of Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)). The Supreme Court's analysis of this factor in *Florida v. Long* suggests that, in examining the equitable consequences of retroactivity, the exclusive focus should be on those who would be adversely affected by retroactivity, not on those who would be harmed by nonretroactive application of the new Supreme Court decision. 108 S.Ct. at 2359. This seems to conflict with the approach of the courts of appeals, which have examined the equitable factors on both sides in retroactivity rulings, *see Jimenez v. Weinberger,* 523 F.2d 689, 704 (7th Cir.1975); *Silverman v. Barry,* 845 F.2d at 1086, and may be the result of the special nature of retroactivity determinations in the Title VII context. In any event, this apparent conflict need not detain us here, for even including the possible inequity to the plaintiffs, the balance of equities weighs against retroactive application.

The plaintiffs hinge their retroactivity argument on the Seventh Circuit's earlier ruling. There, the defendant had argued that *Logan* should not apply to this case because whereas *Logan* specifically had noted that its effect would not be unduly burdensome on the state, this case with its more than 3,000 plaintiffs could place a great burden on state resources. The Seventh Circuit rejected this distinction, first stating that it "d[id] not believe that a judgment for the plaintiffs will result in the dire consequences that the defendant predicts," 827 F.2d at 73, then holding that the extent of the burden did not negate the

due process violation, and finally noting that if this court ruled for the plaintiffs on remand it could take account of equitable factors in fashioning a remedy. The plaintiffs argue that this ruling amounts to a conclusion that the equitable balance in this case favors the plaintiffs.

The plaintiffs' reliance on the Seventh Circuit's statements is understandable. Yet, when read in context, the statement regarding the potential impact of finding a due process violation does not stand for the proposition the plaintiffs urge. The Seventh Circuit was addressing not whether *Logan* applies retroactively to this case, but instead whether (assuming *Logan's* applicability) the defendant had violated due process at all. Dire or not, it is difficult to see how the consequences of finding a violation could impact on whether a violation occurred: this court knows of no case in which a court has held that whether a defendant violated due process turns on how many times he did so or on the costs he would face in remedying the violation. *But cf. Easter House v. Felder*, 879 F.2d 1458, 1479 (7th Cir.1989) (Easterbrook, J., concurring) (suggesting that the existence of a due process violation may turn on the frequency with which state officials provide inadequate procedures). Thus, while the Seventh Circuit's stated confidence that this court could fashion a reasonable remedy may have made it more comfortable in allowing this case to proceed, it cannot be read as a ruling on the extent or the legal ramifications of the burden the defendant would face.

It may well be true that this court could fashion a remedy that would not force the Department "to squander its entire budget." 827 F.2d at 73. But there is no question that any relief this court legitimately would impose would have to be quite burdensome to the state. The very process of locating all of the class members would cost the Department many tens of

thousands of dollars, and this cost pales in comparison to the expense of reopening and processing the claims of class members who decide to pursue their charges.

Of course, the fact that the defendant would suffer a burden from an adverse ruling does not mean that imposing such a burden would be inequitable: Retroactivity always imposes costs on the adversely-affected party, but liability does not equate with inequity. To be inequitable, the defendant must be subject to costs above and beyond those it would have incurred had it applied the correct rule all along. Such is the case here. The defendant faces massive exposure in this case not merely because the law changed, but because so much time passed between the date the Illinois Supreme Court ruled the plaintiffs' claims barred and the date when the plaintiffs filed this lawsuit. The Seventh Circuit has ruled that the plaintiffs are not at fault for this delay in the sense necessary to bar them by laches, but (aside from its fault in getting the law wrong) the state is not responsible for the delay either.

More important even than the inequity to the defendant is the inequity to the employers who would become the respondents to employment discrimination charges were the plaintiffs granted the relief they seek. The plaintiffs note that *Bennett* held that these employees are not indispensable parties because this case cannot establish their liability for discrimination. 827 F.2d at 71–72.[6] Yet, there is no question that the employers will suffer injury if the plaintiffs prevail here. Innocent employers will have to defend against discrimination charges that are many years old, with some facing liability because they lack the evidence to dispute decade-old claims; and guilty employers will face excessive potential liability through a delay that, whoever's fault it was, was not theirs.

---

**6.** After nearly two years of briefing and extensive settlement negotiations, the defendant, at the final hour, has moved for joinder of all employers who could potentially be affected by this litigation. That request is misplaced. The Seventh Circuit already has held that although the employers may be impacted by this litiga-

tion, they are not indispensable parties here, and the Supreme Court's recent ruling in *Martin v. Wilks*, — U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), speaks only to the ramifications of failing to join, not the propriety of doing so.

Finally, the inequity to the plaintiffs enters the picture. There is no question that the plaintiffs will suffer from nonretroactive application inasmuch as they will be unable to pursue their discrimination claims, and that they will do so because Illinois failed to abide by what we now know to be a constitutional mandate. Yet, like a finding of retroactivity, non-retroactivity always will impose this sort of loss—or in the criminal context even worse—on the adversely-affected party; courts order it nonetheless when the inequity of retroactivity would exceed that of nonretroactivity. On the record before this court, this is such a case.

## CONCLUSION

The defendant's motion for joinder is denied. The plaintiffs' motion for summary judgment on the issue of liability is denied. Judgment is entered for the defendant.