300 F.Supp.2d 805 (2003)
In re COPPER MARKET ANTITRUST LITIGATION.
Southwire Company and Gaston Copper Recycling Corporation, Plaintiffs,
v.
J.P. Morgan Chase & Co., as successor to J.P. Morgan & Co., Inc.; Morgan Guaranty Trust Company of New York; Sumitomo Corporation; Sumitomo Corporation of America; Yasuo Hamanaka; and Global Minerals and Metals Corporation, Defendants.
MDL No. 1303,
Civil No. 02-C-0707-C.
United States District Court, W.D. Wisconsin.
November 25, 2003.
*806 William R. Steinmetz, Milwaukee, WI, James H. Bratton, Jr., Atlanta, GA, for Plaintiffs.
James H.R. Windels, Davis, Polk & Wardwell, New York City, for Defendants.

OPINION AND ORDER
CRABB, Chief Judge.
Defendants Sumitomo Corporation and Global Minerals and Metals Corporation have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the first amended complaint of plaintiffs Southwire Company and Gaston Copper Recycling Corporation on the ground that the statute of limitations has run. (Defendants J.P. Morgan & Co., Inc. and Morgan Guaranty Trust Company of New York filed a similar motion on July 1, 2003. It was converted to a motion for summary judgment in an order entered on August 19, 2003; briefing is not yet complete.) Federal question jurisdiction is present. 28 U.S.C. § 1331.
In support of the motion to dismiss, defendants have submitted a number of exhibits, including a printout of plaintiff Southwire's website and newspaper articles reporting the discovery and investigation of defendant Sumitomo's manipulations of the copper market in the 1990s. Plaintiffs object to any consideration of these materials, arguing that it is improper for the court to take notice of them for the purpose of deciding a motion to dismiss. Plaintiffs' objection is not well-founded. "A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir.1998); see also United States v. Wood, 925 F.2d 1580, 1582 (7th Cir.1991) (district court may take judicial notice of matters of public record).
Plaintiffs ask the court to give them additional time for discovery in the event that the court relies on the materials defendants filed in support of their motion. Plts.' Br., dkt. # 524, at 5-6. However, they do not say what materials they might submit to refute the fact that certain news articles appeared in widely circulated newspapers describing defendant Sumitomo's alleged market manipulations. Instead, they cite Horn v. A.O. Smith Corp., 50 F.3d 1365, 1378 (7th Cir.1995) for the unexceptional but irrelevant proposition that fraudulent concealment and the plaintiffs' due diligence are questions of fact unsuited for summary judgment. Neither fraudulent concealment nor due diligence is at issue on defendants' motion. Plaintiffs alleged in their first amended complaint that defendants Sumitomo and *807 Global Metals engaged in fraudulent concealment until June 14, 1996. The only questions are whether certain lawsuits tolled the running of the statute of limitations and, if so, for how long.
In deciding this motion, I have considered documents filed with the Superior Court of California in Heliotrope v. Sumitomo Corp., Case No. 00701697, and court documents related to Loeb Industries, Inc. v. Merrill Lynch International, Inc., 99-C-0377-C, a case filed in this court. Also, I have considered information contained in the August 19, 2003 order addressing the motion to dismiss filed by defendants J.P. Morgan & Co., Inc. and Morgan Guaranty Trust Company of New York. Finally, I have considered several newspaper articles from June 14, 1996.
I conclude that plaintiffs may not rely on equitable estoppel to toll the statute of limitations because, as noted above, they have not alleged in their first amended complaint that the moving defendants fraudulently concealed their wrongdoing after June 14, 1996 or that they themselves acted with due diligence. I conclude also that if the Heliotrope action tolled the statute of limitations at all, it did so only until the Superior Court of California denied class certification in the case for a total of about one year and four months. I conclude that plaintiffs may not use multiple class actions for tolling purposes; therefore, the litigation in the Loeb Industries case provides plaintiffs a tolling benefit only if they did not derive any tolling benefit from Heliotrope. This does not save plaintiffs' case, because the Loeb Industries litigation tolled the statute of limitations for only about one year and three months. Neither the 15-month tolling from the Heliotrope litigation nor the 14-month tolling from Loeb Industries would make plaintiffs' action timely. Plaintiffs have not suggested that any evidence exists to support the use of equitable tolling. Therefore, I will grant defendants' motion to dismiss on the ground that litigation of this case is barred by the statute of limitations.

FACTUAL ALLEGATIONS
Plaintiff Southwire Company manufactures and distributes electrical quality copper rod, wire and cable in interstate and foreign commerce, directly and through its subsidiaries. Plaintiff Gaston Copper Recycling Corporation is a wholly owned subsidiary of plaintiff Southwire engaged in the same activities as its parent. Defendant J.P. Morgan Chase & Co. is the merged successor of J.P. Morgan & Co., Inc.; defendant Morgan Guaranty Trust Company of New York is a wholly owned subsidiary of J.P. Morgan Chase & Co.; defendant Sumitomo Corporation is a Japanese corporation that entered into contracts or agreements with respect to physical copper and copper futures or options in order to raise, fix, stabilize and maintain the price of copper at artificially high levels; defendant Sumitomo Corporation of America is a wholly owned subsidiary of defendant Sumitomo Corporation; and defendant Yasuo Hamanaka is a citizen of Japan. At material times, Hamanaka was defendant Sumitomo's chief copper trader. He held the office of general manager of the company's copper trading operations from August 1987 until about June 13, 1996. Defendant Global Minerals and Metals Corporation is a copper merchant firm that entered into a series of supply contracts with Sumitomo covering at least the period 1994-1996. (Because defendants Sumitomo Corporation and Global Minerals and Metals Corporation are the only moving defendants, I will refer to them simply as defendants.)
Physical copper is purchased and sold in commercial quantities. Its price is linked structurally to the prices for copper futures *808 on the London Metals Exchange, known as the LME, and on Comex, a designated contract market. Almost all transactions in copper cathode and rod in the United States are priced with reference to the Comex copper futures prices. Plaintiffs purchased physical copper during the relevant time periods.
On June 14, 1996, the Financial Times, Wall Street Journal and Washington Post published articles concerning defendant Sumitomo's involvement in unauthorized trading in the copper market. In an order entered on May 11, 1998, the Commodity Futures Trading Commission entered findings and an order imposing remedial sanctions against defendant Sumitomo for violating provisions of the Commodities Exchange Act by raising, fixing and maintaining the prices of physical copper and copper futures. Defendant Sumitomo settled the matter by payment of a civil penalty, without admitting or denying the findings.
On July 8, 1996, a class action lawsuit against defendants was filed in the Superior Court of California (Heliotrope v. Sumitomo Corp., Case No. 00701697). Other class actions were filed in the same court and consolidated with Heliotrope. The plaintiffs alleged the same material facts as those alleged in the present action, that is, that defendants had conspired to artificially inflate the price of copper in violation of the laws of California and other specified states.
Plaintiffs participated as putative class members in the Heliotrope class action. The proposed Heliotrope class consisted of "businesses which reside or do business in jurisdictions that recognize antitrust standing for indirect purchasers of price-fixed goods ... who, between January 1, 1993, and the date of trial (the `Class Period'), inclusive, purchased copper-based products and paid prices for such copper-based products that were inflated due to defendants' manipulations and unlawful actions." On October 10, 1997, the Superior Court of California denied the motion for class certification, holding that: (1) the "proposed class as defined by [p]laintiffs is unmanageable due to the degree of complexity in applying the laws of nineteen different states"; and (2) the plaintiff's definition of "purchasers" was uncertain and therefore the class failed to meet the requirement of "ascertainability." However, the court gave conditional approval to a class of copper product purchasers for settlement purposes on October 13, 1998. On December 28, 1998, plaintiffs submitted a request to opt out of the various settlement and litigation classes within the Heliotrope action. The court approved plaintiffs' request on February 5, 1999.
On June 8, 1999, defendants were sued in a class action in this court, Loeb Industries, Inc. v. Merrill Lynch International, Inc., 99-C-0377-C. Plaintiffs in Loeb Industries sued defendants for redress under § 4 of the Clayton Act, 15 U.S.C. § 16, § 1 of the Sherman Act, 15 U.S.C. § 1, and under the law of the several states and the District of Columbia for defendants' conduct in conspiring to raise, fix, stabilize and maintain copper prices at artificially high levels. Plaintiffs defined the class in Loeb Industries as:
All copper or metals dealers and other entities in the United States that purchased physical copper during the period from June 1994 through June 15, 1996, in commercial quantities at prices expressly related to LME or Comex copper future prices. Excluded from the Class are all claims by any of the defendants or their affiliates, all claims by governmental entities, and all claims released in settlement of other class action litigation.
I denied class certification in Loeb Industries and granted defendants' motion to *809 dismiss on August 24, 2000, for plaintiffs' failure to show that the putative class had antitrust standing and could be ascertained. Plaintiffs appealed the dismissal; the Court of Appeals for the Seventh Circuit upheld it in an opinion issued on September 20, 2002. See Loeb Industries, Inc. v. Sumitomo Corp., 306 F.3d 469 (7th Cir.2002).
Plaintiff Southwire Company filed its original complaint in the present action on December 30, 2002, contending that defendants had conspired with others to raise, fix, stabilize and maintain copper prices at artificially high levels. Plaintiffs Southwire Company and Gaston Copper Recycling Corporation filed the first amended complaint in this action on April 25, 2003, making the same allegations as in the original complaint. Plaintiffs seek damages from defendants for violations under section 4 of the Clayton Act, 15 U.S.C. § 16, section 1 of the Sherman Act, 15 U.S.C. § 1, and RICO, 18 U.S.C. § § 1962(c) and 1962(d).

OPINION
Plaintiffs' claims are subject to a four-year statute of limitations. 15 U.S.C. § 15b (requiring plaintiff to bring antitrust action "within four years after the cause of action accrued"); Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (analogizing RICO to Clayton Act violations and therefore imposing a four-year limitations period for private civil claims under RICO). The central question is whether plaintiffs' claims are time-barred because plaintiffs filed the present action over six years after the discovery of defendants' copper market conspiracy. Plaintiffs admit in their complaint that their cause of action against the moving defendants accrued on June 14, 1996.
For reasons I cannot decipher, plaintiffs argue that the doctrine of equitable estoppel should toll the statute of limitations because defendants fraudulently concealed their misconduct. This argument runs counter to their own allegations that the moving defendants' fraudulent concealment ended on June 14, 1996. Therefore, I have ignored the entire argument, including plaintiffs' citation to Wolin v. Smith Barney Inc., 83 F.3d 847, 852-53 (7th Cir.1996), a case that the Supreme Court repudiated in Klehr v. A.O. Smith Corp., 521 U.S. 179, 196, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997).
To avoid a dismissal of defendants on statute of limitations grounds, plaintiffs must show either that they filed their action no later than June 14, 2000, which they cannot do, or that the statute was tolled for some other reason for at least two years, five months and seven days (using June 14, 1996 as the date the statute began to run and December 30, 2002 as the date plaintiff Southwire filed the present action). Plaintiffs try to show that their involvement in class litigation against defendant Sumitomo was sufficient to toll the statute of limitations for almost two and one-half years.
In American Pipe and Construction Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The Court extended this holding in Crown, Cork & Seal Company, Inc. v. Parker, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), to all proposed class members, not just intervenors. Plaintiffs argue that their claims are within the statute of limitations because the Heliotrope and Loeb Industries class actions tolled the statute, either separately or when added together. Specifically, plaintiffs argue that (1) Heliotrope tolled *810 the statute for two years and seven months (from July 8, 1996 until February 5, 1999); (2) Loeb Industries tolled the statute for three years and three months (from June 8, 1999, until September 20, 2002); and (3) even excluding the time between the denial of class certification and the subsequent certification for settlement purposes in Heliotrope and the period that Loeb Industries was on appeal, Heliotrope and Loeb Industries together tolled the statute for at least two years and nine months (from July 8, 1996, until October 10, 1997; from October 13, 1998, until February 5, 1999; and from June 8, 1999, until August 24, 2000).

A. Tolling Effect of Heliotrope

Defendants contend that plaintiffs should not benefit from any tolling in Heliotrope because 1) the Heliotrope class was too vague; 2) the class definition excluded plaintiffs; and 3) Heliotrope raised state law claims as opposed to federal ones. It is not necessary to decide whether plaintiffs can claim a tolling benefit from Heliotrope. Even if they could, the benefit would be insufficient to avoid dismissal of this case on statute of limitations grounds.
The Heliotrope action was filed on July 8, 1996 and class certification was denied on October 10, 1997; the Superior Court of California permitted plaintiffs to opt out of the settlement class on February 5, 1999. The question is whether tolling ended with the order denying class certification on October 10, 1997, or continued beyond that date because the court's denial was "without prejudice" and because tolling would be consistent with the notice requirements of Fed.R.Civ.P. 23(c)(2).
In plaintiffs' view, the Superior Court of California's denial of class certification in Heliotrope was not a "definitive determination" of the status of the class. The Superior Court of California held oral arguments after issuing its order; it stated that the Heliotrope class might be certified later in the case; and it invited the litigants to propose a class definition that would include all important players. In fact, the court certified a class for settlement purposes. Relying on the way in which the Superior Court handled the proceedings, plaintiffs contend that the statute of limitations continued to run so long as there was a possibility that the court would certify the class. Plaintiffs' argument ignores relevant case law. For example, the Court of Appeals for the Seventh Circuit notes that since American Pipe was decided, courts have confirmed the holding that tolling ends immediately after a court declines to certify the case as a class action, rather than after final judgment or decision on appeal. Hemenway v. Peabody Coal Co., 159 F.3d 255, 265-66 (7th Cir.1998).
Plaintiffs cite Jimenez v. Weinberger, 523 F.2d 689, 696 (7th Cir.1975), in support of their argument that tolling continues even if a court denies class certification. In Jimenez, the court stated that once a court refuses to certify a case as a class action, tolling would continue if the plaintiffs appealed the ruling, but not continue if they acquiesced. Id. Again, plaintiffs place reliance on a holding that is no longer valid (and was mere dicta to start with). The court of appeals has stated that this language from Jimenez is nonbinding and should not be followed. See Hemenway, 159 F.3d at 266 (explaining why lower courts should not follow dicta in Jimenez suggesting that tolling should continue if plaintiffs appeal a denial of class certification).
In any event, the overwhelming authority on this issue holds that tolling stops once a court denies class certification. See, e.g., Crown, Cork & Seal Co., Inc., 462 U.S. at 354, 103 S.Ct. 2392 ("Once the statute of limitations has been tolled, it *811 remains tolled for all members of the putative class until class certification is denied.") (emphasis added); Hemenway, 159 F.3d at 265 (noting that "the period of limitations is tolled between the filing of a class action and the order deciding whether the suit may be maintained as a class action, a principle that covers both grants and denials"); Culver v. City of Milwaukee, 277 F.3d 908, 914 (7th Cir.2002) ("filing of a class action suit tolls the statute of limitations for all the members of the class, but when the suit is dismissed without prejudice or when class certification is denied the statute resumes running for the class members.") (emphasis added). The Superior Court of California denied class certification on October 10, 1997. It is of no consequence that the court allowed the Heliotrope plaintiffs to try to certify a class beyond that date. Another class in the Heliotrope action might have been certified, but there is no guarantee that it would have been.
Plaintiffs argue that allowing the statute of limitations to run once a court denies class certification undermines Fed.R.Civ.P. 23(c)(2), which requires courts that certify a class to notify class members of their right to be excluded from the class. Plaintiffs point out that the statute of limitations may expire between the time that a court denies class certification without prejudice and the time a court certifies a class for settlement purposes. Plaintiffs' argument ignores the fact that Fed.R.Civ.P. 23(c)(2) requires notice only when a court certifies a class. There is no guarantee that a court will certify a class; thus, there is no guarantee that a putative class member will ever receive a Fed.R.Civ.P. 23(c)(2) notice. Under plaintiffs' argument, tolling could continue forever. Against the concern that parties may file protective suits despite the possibility that a court may certify a future class, courts must balance the possibility that tolling may exist in perpetuity if it were to depend on unknown circumstances beyond a court's denial of class certification. At some point, the American Pipe tolling rule must give way to the goal of repose that the statute of limitations promotes.
Given the rule set forth in Crown, Cork & Seal Co., Inc., 462 U.S. 345, 103 S.Ct. 2392, that tolling ends when a court denies class certification, I find that the Heliotrope class action tolled the statute of limitations for plaintiffs from July 8, 1996, until October 10, 1997, or one year, three months and two days. Unless plaintiffs can also benefit from tolling in Loeb Industries, the tolling attributable to Heliotrope is insufficient to prevent the dismissal of plaintiffs' complaint on statute of limitations grounds.

B. Multiple Tolling

Both parties argue about the length of tolling time that Loeb Industries permits. As an initial matter, however, I must determine whether plaintiffs may toll the statute of limitations by relying on multiple class actions and therefore benefit from Loeb Industries if they also derive a tolling benefit from Heliotrope. This is an issue that I did not address in the August 19, 2003 order.
Plaintiffs contend that all prior class actions toll the statute of limitations so long as those actions do not constitute a relitigation of an earlier denial of a class certification; the present action is not a relitigation of a denial of class certification; the plaintiff in Loeb Industries did not attempt to relitigate the denial of class certification in Heliotrope; therefore, plaintiffs should benefit from the tolling in both Heliotrope and Loeb Industries. To support their argument, plaintiffs cite cases from the Third and Ninth Circuits that did not address the question of stacking two previous class actions for tolling purposes. In both McKowan Lowe & Co., Ltd. v. Jasmine, Ltd., 295 F.3d 380 (3d Cir.2002), and Catholic *812 Social Services, Inc. v. I.N.S., 232 F.3d 1139 (9th Cir.2000), the plaintiffs argued that a prior class action should toll the statute of limitations for a subsequent class action. In this case, however, plaintiffs wish to toll the statute of limitations from two previous class actions, "stacking" the class actions on top of one another. In McKowan and Catholic Social Services, the courts extended American Pipe to give plaintiffs in subsequent class actions the benefits of tolling in prior cases. The cases did not say whether class actions could be stacked and thus toll the statute of limitations indefinitely because the issue was not raised in either case.
Although the Court of Appeals for the Seventh Circuit has not addressed the issue of stacking directly, it has cited a decision from the Court of Appeals for the First Circuit in which the court held that "tolling from multiple unsuccessful class actions can't be `stacked,'" and that "Crown, Cork & Seal sets the outer limit of the American Pipe doctrine." Hemenway, 159 F.3d at 266 (citing Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir.1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely.")). The Court of Appeals for the Fifth Circuit holds the same view. Salazar-Calderon v. Presidio Valley Farmers Association, 765 F.2d 1334, 1351 (5th Cir.1985) (holding that putative class members may not piggyback one class action onto another and thus toll statute of limitations indefinitely). "The policies  respect for Rule 23 and considerations of judicial economy  which animated the Crown, Cork and American Pipe tolling rules dictated that the tolling rules ... not permit plaintiffs to stretch out limitations periods by bringing successive class actions." Basch, 139 F.3d at 11. Because McKowan and Catholic Social Services involved different circumstances and because other circuits have held that class actions may not be stacked to toll the statute of limitations, I conclude that plaintiffs cannot add together any tolling to which they might be entitled under Heliotrope and Loeb Industries.

C. Tolling in Loeb Industries

If plaintiffs are not entitled to any tolling benefit from Heliotrope, they are entitled to such a benefit from Loeb Industries. Unlike Heliotrope, Loeb Industries contained the same federal antitrust claims as plaintiffs raise in the present action, making it clear that Loeb Industries would invoke the American Pipe tolling doctrine for plaintiffs. Johnson v. Railway Express Agency, 421 U.S. 454, 467, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (tolling effect given to timely prior filings in American Pipe depended heavily on fact that those filings involved the exact cause of action subsequently asserted (emphasis added)); see also General Investment Company v. Lake Shore & Michigan Southern Railway Company, 260 U.S. 261, 287, 43 S.Ct. 106, 67 L.Ed. 244 (1922) (state court could not entertain action to enjoin violation of Sherman Anti-Trust and Clayton acts); Weston v. AmeriBank, 265 F.3d 366, 368 (6th Cir.2001) (finding previous class action based on state law claims did not toll statute of limitations for subsequent lawsuit based on federal claims). However, Loeb Industries would have tolled only the time from filing until the denial of class certification, or from June 8, 1999 to August 24, 2000, amounting to a tolling of one year, two months and 16 days. This is less than the two years, five months and seven days that plaintiffs need to avoid dismissal on statute of limitations grounds.

D. Fairness

As a last ditch effort, plaintiffs argue that permitting their action to go forward against defendants would be fair and will not prejudice defendants because defendants are involved in other, similar *813 cases that are pending. To the extent that plaintiffs are saying that they are entitled to equitable tolling, their argument is unpersuasive. Federal courts may invoke equitable tolling "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Plaintiffs cite no instance of defective pleadings. Elmore v. Henderson, 227 F.3d 1009, 1013 (7th Cir.2000) (declining to invoke equitable tolling when plaintiff waited four months after statute of limitations had run to sue and offered no excuse for delay). As noted earlier, even if defendants fraudulently concealed their unlawful activity, plaintiffs admit that defendants' fraudulent concealment ended on June 14, 1996. Thus, any tolling that might have occurred as a result of defendants' fraudulent concealment would have ended on that date. Plaintiffs cannot claim equitable tolling beyond that date.
Plaintiffs note that the Court of Appeals for the Seventh Circuit has emphasized that, "wherever possible, cases should be decided on the merits rather than on procedural issues." Woods v. Indiana University-Purdue University, 996 F.2d 880, 884 (7th Cir.1993) ("Once an action has been timely filed, fairness militates against allowing a limitations defense to an opposing party who knows of the action within the required time frame  even though that party is named as a defendant only later, in an amendment that arises out of the same conduct, transaction or occurrence addressed in the original pleading."). However, the court has stated also that courts may not ignore statutes of limitations. See, e.g., Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 536 (7th Cir.1999). Plaintiffs fail to derive enough tolling benefit from either Heliotrope or Loeb Industries standing alone. To permit plaintiffs to derive tolling benefit from both Heliotrope and Loeb Industries would be unfair to defendants and undermine the purpose of the statute of limitations. See American Pipe, 414 U.S. at 554, 94 S.Ct. 756 (even if one has a just claim it is unjust not to put adversary on notice to defend within period of limitation; in time, right to be free of stale claims comes to prevail over right to prosecute them); see also Elmore, 227 F.3d at 1013 (finding statute of limitation deadlines "minimize legal uncertainty both about the outcome of eventual litigation and about the existence and scope of the potential defendant's liability."). Therefore, I will grant defendants' motion to dismiss.

ORDER
IT IS ORDERED that
1. The motion filed by defendants Sumitomo Corporation and Global Minerals and Metals Corporation to dismiss the first amended complaint of plaintiffs Southwire Company and Gaston Copper Recycling Corporation is GRANTED. Plaintiffs' complaint is DISMISSED as to these defendants, with prejudice.